PONDER, Justice.
 

 The plaintiff, William Stoufflet, brought this suit against Joseph G. Duplantis seeking to annul a compromise agreement, dated January 10, 1939, wherein the plaintiff had quitclaimed his rights and interest in 225 acres of land located in Terrebonne Parish to the defendant, and to be decreed the owner of the property involved therein. The plaintiff asked for the annulment of the compromise agreement on the ground of fraud and, in the alternative, on the ground of lesion.
 

 The defendant answered, denying the perpetration of fraud and relied on the compromise agreement. The defendant, further answering, interposed the plea of prescription of ten years under title translative of property and thirty years acquisitive and liberative prescription.
 

 Upon trial, the lower court rejected the plaintiff’s demand and dismissed his suit. The plaintiff has appealed.
 

 The compromise agreement involved herein was executed before a notary public and two witnesses. In this agreement, the plaintiff for the consideration of $300 quitclaims all of his rights, titles, and interest in and to: “A certain tract of land, situated in the Parish of Terrebonne, at about twelve (12) miles below the town of Houma, ón the right descending bank of Bayou Little Caillou, commencing at ten (10) arpents from said Bayou, measuring seven and one-half (7%) arpents front by the balance of the depth of survey, say thirty (30) arpents; bounded above by land of the Succession of Marcelin Duplantis and below by land of Arthur Chauvin, and in front by land of present vendor.”
 

 The quitclaim contains the following pertinent provisions:
 

 “This transfer is made by the vendor to the vendee by way of compromise, and in order to remove any doubt as to the validity of the purchaser’s title in and to said property.
 

 “The purchaser herein, or any of his.assigns, is hereby accorded the right to redeem the above described property from the State of Louisiana, and that under said redemption, title thereto will enure to the benefit of purchaser’s vendees or assigns.
 

 
 *189
 
 “The purchaser furthermore declares that he purchased this same property from the South Louisiana Land Company by act recorded in G. B. 72, at folio 9; that he has since said purchase, conveyed part or all of said property; that the purchase herein made is made for the benefit of his various vendees or their assigns.”
 

 It appears from the record that the property involved herein was acquired by William Stoufflet from Alidor Stoufflet for a consideration of $50 on June 15, 1897. On June 18, 1898, the property was adjudicated to the State of Louisiana for the nonpayment of taxes for 1897. On March 23, 1901, the land was sold by the Atchafalaya Basin Levee District to Edward Wisner. There is nothing in the record to show any transfer of this property by the State to the Atchafalaya Basin Levee District. On July 31, 1902, Wisner sold the property to the South Louisiana Land Company, Limited, of New Orleans. The South Louisiana Land Company, Limited, sold the property to Joseph Gonzales Duplantis for a consideration of $1,-000 on October 27, 1919. Subsequent to this date, Duplantis sold portions of this property to various parties. It is not necessary for the purpose of this decision to recite the sales of portions of this property by Duplantis. Prior to the compromise agreement of January .10, 1939, the attorney for Duplantis redeemed the property from 'the State in the name of William Stoufflet under Act 47 of 1938 by paying $11.45, the taxes due for the year 1897:
 

 In his answer to the appeal herein, the defendant moves in the alternative' to remand'the case, in event the Court would deem it necessary for a decision of the case, in order to afford him an opportunity to introduce a deed from the State to thq Atchafalaya Basin Levee District cimveying to it the property involved herein. He alleges in the motion to remand that since the judgment of the lower court was rendered in this case, the chief deputy clerk for the Parish of Terrebonne has discovered on October 3, 1941, while examining some records stored in the basement vault of the clerk’s office after the completion of the new court house in 1938, an instrument signed by W. W. Heard, Auditor of the State of Louisiana, dated September 28, 1899, purporting to transfer the property to the Atchafalaya Basin Levee District in pursuance to Act 97 of 1890. A copy of this instrument is attached to the motion.
 

 At the time the case was tried, the only defect to the defendant’s title was the absence of a formal transfer of the property to the Atchafalaya Basin Levee District. If the instrument recently found by the deputy clerk were a valid transfer of the property to the Atchafalaya Basin Levee District, there -would be no- break in the defendant’s chain of title. However, we cannot consider this original evidence* and, as we appreciate the law, we would not be warranted in remanding the case unless the instrument was necessary for a decision of the cause. Louisiana Ice Manufacturing Co. v. City of New Orleans, 43 La.Ann. 217, 9 So. 21; C. H. Parker, State Tax Collector, v. New Orleans Gas Light Co., 44 La.Ann. 753, 11 So. 32; L.
 
 *191
 
 A. Frey & Sons, Inc., v. Town of Slidell, 173 La. 397, 137 So. 193; Mayer v. Barrow, 182 La. 983, 162 So. 748; Alexander v. Jackson, 195 La. 446, 197 So. 137; 3 L.L.R. 376; 19T.L.R. 307; Article 906 of the Code of Practice.
 

 The- plaintiff contends that he entered into the compromise agreement through the fraudulent misrepresentations of the defendant and the defendant’s attorney to the effect that his title was one of extreme haziness, and that there was small possibility of the property’s being redeemed after such a long period of time. He contends also that the defendant and the defendant’s attorney fraudulently suppressed the fact that the property had been redeemed for a small amount, and the fact that the plaintiff’s title was valid.
 

 The trial judge, in his written opinion, goes into the evidence in detail and reaches the conclusion that the plaintiff had failed to prove any fraud on the part of the defendant and the defendant’s attorney.
 

 ' It appears from the testimony that the defendant and those who had purchased portions of this land from him ascertained sometime during the year 1938 that there was no deed from-the State conveying the land to the Atchafalaya Basin Levee District recorded in the records of Terrebonne Parish. This information was acquired when Mr. Lawrence Charpentier, who had purchased a.portion of the land from the defendant, applied to the Federal Land Bank for a loan. Act 47 of 1938 authorized the redemption of lands adjudicated to: the State for unpaid taxes still remaining in the State. The period of redemption expired on December 31, 1938. Upon learning that there was no-deed of record transferring the property from the State to the Atchafalaya Basin Levee District, the defendant and his vendees contacted the defendant’s attorney, and he advised them to take the title out of the State. The attorney addressed a letter to the Register of State Land Office, requesting a certificate of redemption in the name of the tax debtor, William Stoufflet. In reply, the Register informed the attorney that the records of the Land Office revealed that the property was transferred on September 28, 1899 to the Atchafalaya Basin Levee District under the provisions of Act 97 of 1890. The attorney secured a certificate from the clerk of Court showing there was no deed of this nature in the records of Terrebonne Parish. Thereafter, on December 16, 1938, the Register of State Land Office executed a certificate of redemption in the name of the tax debtor. This redemption certificate was not received by the defendant’s attorney until January 7, 1939.
 

 The evidence discloses that several conversations took place between the plaintiff and the defendant’s attorney with respect to the purchase of the plaintiff’s interest in the property between October, 1938 and the date of the execution of the compromise agreement. The plaintiff’s version is to the effect that he was led to believe that he could not recover title to the property. The defendant’s attorney contradicted this testimony and testified that he informed the plaintiff at the beginning that he repre
 
 *193
 
 sented interests adverse to him. The plaintiff’s testimony with respect to any misrepresentations is meager and not corroborated. The testimony of the defendant’s attorney is corroborated by other testimony in the record. There is absolutely no evidence in the record to show that the defendant, himself, ever made any misrepresentations to- the plaintiff with respect to the property.
 

 Counsel for the plaintiff lays stress on the fact that the defendant’s attorney did not inform the plaintiff that he had redeemed the property from the State and contends that the concealment of such fact operates as a fraud upon the plaintiff.
 

 From the evidence in this case, the conclusion is inescapable that no misrepresentation was made to the plaintiff by the defendant’s attorney. We know of no law which requires an attorney to reveal information which he has secured for his client. The attorney herein owed no duty to the plaintiff. We are not presented with a case where part of the facts are divulged and others concealed. The attorney had a right to redeem the property in the interest of his client under the provisions of Act 47 of 1938, authorizing an owner or other person interested in the property to redeem it. Of course, it would have had to be redeemed in the name of the tax debtor. This was done.
 

 The defendant and his author? in title have paid taxes on this property over a long period of time. He and his authors acquired the property in good faith and have been in possession of it for a number of years. The plaintiff has never taken any legal steps during this long period of time to recover it.
 

 Bagley Lirette testified that he approached the plaintiff on December 31, 1938, prior to the execution of the quitclaim deed of January 10, 1939, and informed him that he could get the land back if the plaintiff would give him a one-half interest in the property.
 

 The plaintiff admits in his testimony that he talked with two other attorneys prior to the execution of the compromise agreement, and they informed him that it would be difficult and expensive for him to recover the property.
 

 The plaintiff testified that when he signed the compromise agreement, he and the defendant’s attorney were ,the only persons present. This testimony is contradicted by the defendant and the defendant’s attorney. The witnesses to the transaction did not testify. The plaintiff also testified that only portions of the instrument were read to him before he signed it. This was contradicted by the defendant and the defendant’s attorney.
 

 In view of the preponderance of the testimony and the fact that the defendant willingly signed the authentic act, the conclusion is inescapable that the instrument was read to the plaintiff, and he signed it in the presence of the notary and witnesses.
 

 To uphold the plaintiff’s position in this case, we would have to accept his uncorroborated testimony which is, to say the least, meager and unsatisfactory and reject the testimony of the defendant, the testi
 
 *195
 
 mony of the defendant’s attorney, other corroborating testimony, and the effect of the authentic act. This, we cannot do.
 

 The plaintiff’s alternative contention of lesion is predicated on the ground that the consideration for the quitclaim of the property was entirely out of proportion to its value.
 

 From the evidence, it appears that there was a dispute as to the titles, and that both the plaintiff and the defendant were consulting lawyers with respect thereto.
 

 “A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.” Article 3071, R.C.C.
 

 “Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to- include in them.” Artitle 3073, R.C.C
 

 “Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.” Article 3078, R.C.C.
 

 “This was therefore a transaction or compromise. It was an agreement between the parties to adjust their differences by mutual consent, Civil Code, Article 3071. This transaction had between the ■ parties ‘a force equal to the authority of things adjudged.’ ' Civil Code, Article 3078. Transactions of this kind,need no other cause or consideration to support them than that which the Code itself prescribes in Article 3071. The manner in which the parties settled their differences was preferred by each to the hope of gaining, balanced by the danger of losing.” Gregory v. Central Coal & Coke Corporation, 197 La. 95, 200 So. 832, 837.
 

 “A compromise settlement is intended not to bring about a decision of the questions of law in dispute, but to pretermit them. That is why article 1846 of the Civil Code, which declares that a contract may be anulled for an error of law, as well as for an error of fact, if the error was the only or principal cause or motive for the contract, contains the proviso: ‘A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law.’ Article 3078 also declares that a transaction — meaning a compromise settlement or agreement — is not subject to annulment for an error of law, or for lesion.” Hill v. Hill, 173 La. 574, 138 So. 107, 108.
 

 “There is no- rule of law, morals, or ethics which denies to the ordinary citizen the right to compromise, with the person asserting it, a claim against him for damages, nor is that right defeated by any previous employment of counsel to prosecute such claim; and, when the compromise is effected in the manner provided by law, it has the force of the thing adjudged, and
 
 *197
 
 cannot be attacked collaterally, or for error of law or lesion, in a direct action. Civ. Code, arts. 3071, 3078-3080; Adle et al. v. Prudhomme, 16 La.Ann. 343; Ackerman v. McShane, 43 La.Ann. 507, 9 So. 483; Oglesby v. Attrill, 105 U.S. 605, 26 L.Ed. 1186.” Russ v. Union Oil Co., 113 La. 196, 36 So. 937, 940. Also see: John H. Cassidy v. D. Rex Joseph, 204 La. 664, 16 So.2d 225; Misuraca v. Metropolitan Life Ins. Co., 199 La. 867, 7 So.2d 167; Sellwood v. Phillips, 185 La. 1045, 171 So. 440; Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303; Jackson v. United States Fidelity & Guaranty Co., La.App., 199 So. 419; Beck v. Continental Casualty Co., La.App., 145 So. 810; 14 T.L.R. 287.
 

 It is well settled that a compromise cannot be attacked on the ground of lesion in the absence of fraud.
 

 “As between the parties to it, a compromise has a force equal to the authority of the thing adjudged. It cannot be attacked for an error of law or for lesion. Civil Code, art. 3078. It, however, may be annulled in cases where there exists fraud or violence. Civil Code, arts. 3079 and 1832.” Buckelew et al. v. Wyche, 162 La. 67, 110 So. 91, 92.
 

 “For it is of the nature of a compromise that it cannot be attacked on the ground of lesion, that is to say, for failure to receive all that one may be entitled to. Rev.Civ.Code, arts. 3078, 1860. In other words, in every compromise the hope of gaining is always balanced by the danger of losing. Rev.Civ.Code, art. 3071.” Young v. Glynn, 171 La. 371, 131 So. 51, 52.
 

 For the reasons assigned, the judgment of the lower court is affirmed at appellant’s cost.