**GULF OIL CORPORATION** and Estate of William G. Helis, et al., Appellants,

v.

Nicholas D. **OLIVIER**, Appellee.

No. 26296.

United States Court of Appeals
Fifth Circuit.

June 4, 1969.

Rehearing Denied July 14, 1969.

Booth Kellough, Melvin Evans, New Orleans, La., H. M. Holder, Shreveport,

La., Morris Wright, Bernard J. Caillouet, H. H. Hillyer, Jr., R. King Milling, New Orleans, La., for appellants.

Arthur C. Reuter, New Orleans, La., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

THORNBERRY, Circuit Judge:

The controversy began as a simple suit on a debt with Nicholas Olivier, the plaintiff-appellee, suing Humble Oil, one of the appellants, to recover overriding royalty payments carved out of an oil and gas lease on 57.36 acres of land in Plaquemines Parish, Louisiana. Humble did not deny that it was producing as lessee under the lease alleged in the complaint, which we shall call the Cutrer-Olivier lease, nor did it challenge the validity of the assignment of overriding royalties alleged in the complaint. Rather, it took the position that it could not safely make payments under its assignment of overriding royalties to Olivier because of the existence of a conflicting lease on the same property and of conflicting overriding royalties carved out of the conflicting lease. On the theory that the conflicting lease might somehow expose it to double liability or affect its independent liability to Olivier, Humble filed a motion under Rule 22 for interpleader of the parties in the conflicting chain of title. The district court granted the motion, holding that Olivier's suit against Humble for overriding royalty payments necessitated an adjudication as to which of the two conflicting leases was superior. See Olivier v. Humble Oil & Refining Co., E.D.La.1963, 225 F. Supp. 536. Following trial on the merits, the court held the Cutrer-Olivier lease to be superior and awarded overriding royalty payments to Olivier with interest on payments accrued since 1959. Gulf Oil, the Estate of William G. Helis, and William G. Helis, Jr., parties whose interest will be identified hereafter, appeal from the adjudication of title, saying that the conflicting lease, which we shall call the Perez lease, is superior to the Cutrer-Olivier lease. Humble does not contest the way in which the title question was decided but appeals from the award of interest to Olivier and from the court's refusal to award costs and attorneys' fees to Humble. Except for the award of interest, we affirm.

I.

For purposes of this case, we may assume that the original owners of the 57.36 acres of land were Dr. and Mrs. Noah Cutrer. They lost the property at a tax sale in 1945 but attempted to redeem it as provided by Louisiana law in 1948. The validity of the redemption is in question here. The purchasers at the 1945 tax sale were predecessors in interest of the so-called Perez group and, for convenience, will be referred to as the Perez group. The title dispute underlying the conflict between the two leases is basically a dispute over whether the property is owned by successors in interest of the Perez group, purchasers at the tax sale, or successors in interest of Dr. and Mrs. Cutrer, the original owners who attempted to redeem the property by paying back taxes plus interest and penalties. In 1953, proceeding on the assumption that the redemption was valid, Dr. Cutrer and Nicholas Olivier, who had obtained an ownership interest under the Cutrer chain of title, leased the property to Humble for drilling purposes and an overriding royalty for Olivier ($\frac{1}{24}$ of $\frac{7}{8}$) was carved out of the lease. In 1949, proceeding on the assumption that their tax title had become unassailable by passage of the three-year statutory period without a valid redemption, the Perez group had leased the same property to William G. Helis, succeeded by the Estate of William G. Helis, and an overriding royalty interest ($\frac{1}{64}$) had been assigned to William G. Helis, Jr. Thus, the title dispute involved Cutrer and Olivier on the one hand and the Perez group on the other, conflicting lessors; Humble and the Estate of William

G. Helis, conflicting lessees; and Olivier and William G. Helis, Jr., overriding royalty owners under the conflicting leases:

### Conflicting leases on 57.36 acres of land in Plaquemines Parish, Louisiana

| *Cutrer-Olivier lease (1953)* | *Perez lease (1949)* |
|---|---|
| *Lessors:* Cutrer, Olivier | Perez group |
| *Lessees:* Humble | William G. Helis— Estate of William G. Helis |
| *Owners of overriding royalties:* Olivier | William G. Helis, Jr. |

———◆———

In 1958, the lessees resolved the title dispute *as between themselves* by executing a joint operating agreement, contributing their leases to the joint operation, and designating the Gulf Oil Corporation as operator. The oil production made possible by this joint operating agreement brought about Olivier's claim against Humble for overriding royalty payments. In 1959, Olivier attempted to remove the cloud on the Cutrer title by obtaining a quitclaim deed from the Perez group. This instrument gave him whatever interest the Perez group had in the property and the Perez group passed out of the picture. Thus, as of 1959, Olivier had the lessor's interest in both chains of title and clearly was the central figure in the title dispute:

*Olivier*

| | |
|---|---|
| *Lessees:* Humble | Estate of William G. Helis |
| *Overriding royalty owners:* Olivier | William G. Helis, Jr. |

———◆———

Having explained the facts relevant to the title dispute, we now attempt to describe more completely the structure of the present lawsuit. As previously stated, Humble was allowed to interplead everyone involved in the title dispute, including Gulf, the Estate of William G. Helis, and William G. Helis, Jr.[1] In the trial court, Olivier opposed the interpleader on the ground that the title dispute was irrelevant to his lawsuit against Humble since Humble admitted producing under the Cutrer-Olivier lease and admitted having assigned an overriding royalty interest to Olivier. These admissions, he argued, obligated Humble to make the overriding royalty payments regardless of which lease was superior. But the court rejected his contention, partly because the assign-

---

1. Also joined as parties to the lawsuit were Mrs. Lillian C. Stevens, Testamentary Executrix of the Succession of Dr. Noah S. Cutrer, and Elmo S. Laudumiey. We will not concern ourselves with their interests since they have aligned themselves with Olivier and assert that the position taken by him in the trial court and in this Court is correct. So far as we are concerned, William G. Helis, Jr. is the only party with an overriding royalty interest adverse to Olivier's.

ment of an overriding royalty from Humble to Olivier contained what is called a proportionate reduction clause:

> If Lessor in said lease owns a less interest in the premises covered thereby than the entire undivided fee, then said overriding royalties shall be payable to the assignee herein in the proportion which the interest of the Lessor in said land bears to the entire and undivided fee.

This clause means that no payments are due to the assignee of the overriding royalty if the lessor has no interest in the property and the lease out of which the override was carved is invalid; so far as this case is concerned, the clause could be interpreted to eliminate Humble's liability to Olivier for overriding royalties in the event the Cutrer-Olivier lease were held inferior to the Perez lease. Thus, partly because of the proportionate reduction clause, Humble was permitted to bring the title question into the case so that the court could determine its effect on Humble's liability to Olivier.

Besides feeling that the proportionate reduction clause might effectively nullify its liability to Olivier, if the Cutrer-Olivier lease were found to be invalid, Humble had another reason for wanting the title dispute to be resolved. Under the joint operating agreement, it was obligated to pay five-sixths of whatever overriding royalties were validly claimed. That is, by virtue of its agreement with Gulf and the Helis Estate, Humble was contractually bound to cover five-sixths of whatever overriding royalty claims were validly asserted under the leases contributed to the joint operating agreement, namely, the Cutrer-Olivier lease and the Perez lease. Under this same provision, Gulf and the Estate were each bound to cover one-twelfth of the claims. To avoid having to pay five-sixths of both Olivier's claim and Helis, Jr.'s, Humble wanted a judicial determination as to which lease was valid and which override was valid. Likewise, Gulf and the Helis Estate were interested in not having to contribute

to the payment of both overrides. The court below agreed with Humble that Olivier's suit for overriding royalty payments required a determination of which lease and which override were valid. In reaching this conclusion, the court assumed that the validity or invalidity of either of the overrides would depend on the validity or invalidity of the lease out of which it had been carved. Accordingly, the motion for interpleader was granted and the title dispute became entangled with what had originally been a simple suit on a debt.

Once they had been interpleaded, Gulf, the Helis Estate, and William G. Helis, Jr. asserted the superiority of the Perez lease and the validity of the Perez tax title. Also, they urged that Olivier's overriding royalty under the Cutrer-Olivier lease was invalid. In taking the latter position, Helis, Jr. was merely trying to protect his override. Since the lawsuit had been structured on the theory that only one of the two overrides could be valid and payable, that being the one under a valid lease, Helis, Jr. was naturally interested in Olivier's lease and override being declared invalid. Likewise, Gulf and the Helis Estate were interested in Olivier's override being declared invalid because they wanted to avoid liability under the joint operating agreement for payment of both overrides and preferred to pay Helis, Jr.'s as it was the smaller of the two. Also, of course, Gulf and the Estate urged the validity of the Perez lease in order to protect their leasing interests to whatever extent necessary. The court, however, ruled against the parties in the Perez chain of title, holding that the redemption of the Cutrer title was valid and that the Cutrer-Olivier lease was therefore superior. Because of the way the lawsuit had been structured, it followed that Olivier's override was superior to Helis, Jr.'s. Gulf, the Estate, and Helis, Jr. appeal from this determination while Humble, being content with a resolution of the title dispute one way or the other, appeals only from the award of interest to Olivier and from the

court's refusal to award legal fees and costs to Humble.

In his brief and on oral argument, Olivier has persisted in his contention that the title question need not be adjudicated because it is irrelevant to his suit against Humble for overriding royalty payments. He says Humble cannot deny its duty to make the payments and that no one else has a legitimate interest in seeing them denied to him. In what is a rather complicated land dispute, his argument at least has the virtue of simplicity: Humble is producing oil on the property under authority granted by the Cutrer-Olivier lease and has acknowledged execution of an assignment of overriding royalties to Olivier; therefore, it cannot be heard to deny its debt to Olivier regardless of which lease is superior and regardless of whether it may become liable to someone else for additional overriding royalties. Insisting that no one else can possibly have an interest in his controversy with Humble and that Humble has merely thrown up a smokescreen in the form of the title dispute, he urges us not to reach the title question. The difficulty with this argument is that the judgment rendered by the court below adversely affects the parties in the Perez chain of title. The order granting interpleader stated that it would be necessary to decide which override was valid and the final judgment awarding overriding royalties to Olivier had the effect of, or certainly could be construed to have the effect of, invalidating William G. Helis, Jr.'s override. Regardless of whether it was properly an issue in Olivier's suit against Humble, Helis, Jr. appears to have lost his override. Likewise, regardless of whether the Perez lease was properly an issue in the suit, Gulf and the Helis Estate appear to have lost their leasing interests under the Perez chain of title. If we were to accede to appellee by declining to reach the title question, we would leave intact the lower court judgment and thereby deny appellants an appeal from its adverse effects.

■ To get the title question out of the case as Olivier requests we would have to do more than simply decline to reach it. We would have to enter an order restructuring the entire lawsuit and saying, in effect, that the motion for interpleader should never have been granted. Having said that the interpleader was erroneous and having edited out of the final judgment its adverse effects on Gulf, the Helis Estate, and Mr. Helis, Jr., we could then focus on the narrow question of whether Humble is liable to Olivier for overriding royalties accrued under the assignment. In so doing, we would be saying that Humble is not entitled to an adjudication of the title dispute one way or the other because it is not relevant to the question of the company's indebtedness to Olivier for overriding royalties. We would be saying that the proportionate reduction clause in the assignment from Humble to Olivier could not operate to relieve Humble of liability even if it were determined that Cutrer and Olivier, the lessors, had no ownership interest in the property. We would be reaching this conclusion with respect to the proportionate reduction clause even though Olivier does not specifically urge it in his brief and is not before the Court on any kind of cross appeal. While this might be a correct holding, and while it might be correct to hold that interpleader of the parties involved in the title dispute was error, we are unable to consider this as an available course of action because no appellant before the Court has assigned as error the order granting Humble's motion for interpleader. Olivier did not file a cross appeal and has no assignments of error before us; the appellants before us say that the motion for interpleader was correctly granted. Therefore, the posture of the appeal is such that we must assume the reasons underlying the order granting interpleader were sound and that resolution of the title question is necessary to a determination of Humble's liability to Olivier. Because of the procedural posture of the

appeal, the title question is hopelessly entangled with Olivier's prayer for overriding royalty payments. We must come to grips with it.

## II.

Appellants—Gulf, the Helis Estate, and Mr. Helis, Jr.—attack the trial court's decision against the validity of the Perez tax title on two grounds. First, they say that the party who benefitted from the decision, namely Olivier, has no standing to assert the invalidity of the Perez title and Perez lease. In making their estoppel argument, they reason as follows: By its very nature, Olivier's suit against Humble for overriding royalties asserted the validity of the Cutrer-Olivier lease and the invalidity of the Perez lease, but since the conveyance by quitclaim deed gave Olivier the Perez title, he is estopped from attacking the Perez lease. Since the quitclaim deed gave him the Perez lease, it is contended that he is estopped from doing anything in derogation of that lease. Thus, since his suit against Humble for overriding royalties must necessarily assert the invalidity of the Perez lease, the suit must necessarily fail. Accepting this argument for the moment, we see that Olivier, who never wanted the title question adjudicated in the first place, would find his suit against Humble completely foreclosed by his position in the Perez chain of title. If he were suing for overriding royalties under the Perez lease, we suppose that Humble would take the cudgel from the Helis Estate and Gulf and hold him estopped from asserting the invalidity of the Cutrer-Olivier lease. Thus, the ultimate thrust of appellants' argument is that Olivier shut himself off from overriding royalties when he attempted to clear the Cutrer title by obtaining a quitclaim deed from the Perez group. If this were true, the lessees producing oil on the property under a joint operating agreement would have the owner in a nice fix.

This estoppel argument commends itself so little to our sense of equity that we are not surprised to find Louisiana cases rebut it. Because he attempted to clear the Cutrer title by accepting a quitclaim deed to whatever interest the Perez group had, appellants would hold Olivier forever barred from asserting the superiority of the Cutrer title over the Perez title. Essentially the same estoppel argument was advanced and rejected in Williams v. Williams, 56 So.2d 216, 219 (La.Ct.App. 1951):

> Carried to its logical conclusion, appellee's argument means that where one has a valid title to real property, but to remove a cloud therefrom takes deed from another whose adverse title to the property is inferior, he thereby admits his last vendor to have had the better title, and henceforth in a contest would be estopped to plead his first and better title to defeat his adversary. Such a contention, on its face, it seems to us is wholly unsound.
>
> It frequently occurs that owners of land, under valid chain of title, acquire from inferior claimants thereof whatever interest they have therein in order to clear the title, and to avoid the harassment of litigation.

This language was quoted with approval in Green v. Chamberlain, 60 So.2d 120, 127 (La.Ct.App.1952). Spence v. Lucas, 1916, 138 La. 763, 70 So. 796, the case relied on by appellants, is inapposite as it did not involve the kind of situation involved in this case and referred to in Williams v. Williams. Assuming that Olivier's suit against Humble entailed an attack on the Perez title, it is our view that he would not be estopped under Louisiana law from making that attack merely because he attempted to secure the Cutrer title by taking a quitclaim deed from the Perez group. He has done nothing, performed no act which in his suit against Humble should give rise to an estoppel in favor of les-

sees and overriding royalty owners under the Perez lease.[2]

Appellants' second argument against the trial court's decision is based on an alleged technical deficiency in the redemption of the property by Dr. Cutrer. They see a fatal defect in that the only name appearing on the certificate of redemption is Dr. Noah S. Cutrer's while the tax debtor of record was Mrs. Noah S. Cutrer. On the ground that Dr. Cutrer was not the tax debtor of record and did not recite that he was acting "in the name of the tax debtor," they urge that his redemption was ineffective and therefore that the tax deed belonging to successors in interest of the tax purchasers is the superior title.

■ The statutes and cases bear out the trial court's view that Louisiana law favors redemption of property sold for unpaid taxes. The Louisiana Constitution, art. 10, § 11, gives the owner deprived of his property by sale the absolute right to redeem during three years from the registry of the tax deed. Not only the owner but "any person, interested personally, or as, heir, legatee, creditor, or otherwise" may redeem. La. Rev.Stat.Ann. §§ 47:2222, 47:2224. It has been held that a person in possession as owner, with or without title and in good or bad faith, may redeem until the right of the true owner is established. Bentley v. Cavallier, 1908, 121 La. 60, 46 So. 101. Moreover the courts have allowed a person to redeem in behalf of the owner without the latter's knowledge or consent. State ex rel. Busha's Heirs v. Register of Conveyances, 1904, 113 La. 93, 36 So. 900. Thus, it was perfectly legal for Dr. Cutrer to redeem the property for his wife, the tax debtor of record, and he did so within the three-year period by remitting the back taxes together with interest and penalties. The trial court

decided that this redemption cut off the rights of the Perez group, purchasers at the tax sale, before they had matured into full ownership and restored full ownership to the Cutrers.

■ Despite the liberality with which Louisiana courts view redemptions for the tax debtor by other people, appellants insist that the redemption here was ineffective because the redemption instrument does not recite that Dr. Cutrer was acting in behalf of his wife, the tax debtor. They say it should have recited that he was acting "in the name of the tax debtor." Put another way, their argument is that the instrument lacks some words of art which must be included if the tax purchasers are to have notice through the public records that someone acting in behalf of the tax debtor has redeemed the property. Put still another way, the contention is that while Dr. Cutrer had a right to redeem for his wife's advantage, he did not say he was doing that. Since this is not the case of an unidentified and unidentifiable party redeeming for the tax debtor but rather of a husband redeeming for his wife, we are at a loss to find any merit in appellants' position. Upon seeing a tax deed listing Mrs. Noah S. Cutrer as tax debtor and a redemption instrument signed by Dr. Noah S. Cutrer, any reasonable man would assume that the husband had redeemed the property for his wife. No reasonable man would ask himself whether there was any relationship between Dr. and Mrs. Noah S. Cutrer or whether Dr. Noah S. Cutrer was acting in behalf of Mrs. Noah S. Cutrer. In this situation, the words of art which appellants say should have been recited in the redemption instrument would have added only that which would have been obvious to anyone who looked at the records. No

2. Appellants also contend that Olivier is estopped from maintaining the superiority of the Cutrer title because he has an overriding royalty interest under the Perez lease through his nominee Elmo Laudumiey. We do not see how this interest could represent an act giving rise to an estoppel since it is conceded that neither he nor his nominee has ever received any overriding royalty payment under the Perez lease on the 57.36 acres in question.

one could have been misled by their absence.

Stoufflet v. Duplantis, 1945, 208 La. 186, 23 So.2d 41, and In re Berry, 148 So.2d 313 (La.Ct.App.1963), two of the cases relief upon by appellants, contain language which might be construed to mean that the words "in the name of the tax debtor" are essential to the validity of a redemption instrument,[3] but in each of those cases the question before the court was whether an attorney had the right to redeem property in behalf of his client. It was held that he did. Having said that an attorney has the right to redeem for his client, just as Dr. Cutrer concededly had the right to redeem for his wife, the court in each case went on to say that the attorney must redeem in the name of the tax debtor. We construe this language to mean that since the attorney's name was different from the name of the tax debtor appearing on the tax deed, it was incumbent upon the attorney to identify his interest and make it clear that he was acting in behalf of, or in the name of, the tax debtor. We do not read these cases as setting forth words of art essential to a redemption instrument but as saying that when a person other than the tax debtor redeems for the tax debtor he must make it clear that he is acting in the tax debtor's behalf. In the case at bar, as we have said, it could not reasonably be doubted that Dr. Cutrer was redeeming for his wife. We find no Louisiana cases which convince us that a redemption instrument is fatally deficient for want of certain words of art even though the records make it plain

that a husband redeemed the property in behalf of his wife, the tax debtor. Finding no cases to this effect, we conclude that Louisiana courts would adhere to their policy of favoring redemptions and uphold the Cutrer redemption.[4]

Thus, the title question is decided in favor of the party who did not think it should be decided at all. We hold that the redemption by Dr. Cutrer was effective, that the Cutrer title is valid, and that the Perez tax title ceased to exist as of the date of redemption. It follows that the Cutrer-Olivier lease is superior to the Perez lease and that nothing more can stand between Olivier and his overriding royalties. His lease is superior, the assignment of overriding royalties is valid, and Humble is producing; therefore, Humble must make the payments. It also follows that the leasing interests of Gulf and the Helis Estate are invalid to the extent that these leasing interests depend on the validity of the Perez tax title and original Perez lease. Likewise, William G. Helis, Jr.'s overriding royalty interest is invalid to the extent that its validity depends on the validity of the Perez tax title and original Perez lease. Since Mr. Helis, Jr. willingly joined the interpleader in the court below, willingly joined his cohorts in attacking Olivier's override and the Cutrer title, and in all respects adopted the position that only one of the two conflicting overrides could be valid and payable, that being the one under the superior lease,[5] it follows that his claim for overriding royalty payments under the Perez

3. In Stoufflet v. Duplantis, the court said, "Of course, it [the property] would have had to be redeemed in the name of the tax debtor. This was done." 23 So.2d at 43. This statement was quoted by the court in *In re Berry*.

4. Staples v. Mayer, 1892, 44 La.Ann. 628, 11 So. 29, the third case on which appellants principally rely, is so unlike the instant case as to make extended discussion unnecessary. The tax debtor alleged that a certain transaction between the tax purchaser and one of the tax debtor's creditors constituted a redemption. The

instrument to which the tax debtor pointed in support of his contention did not even purport to be a redemption deed but was a bill of sale from the tax purchaser to the creditor.

5. We suppose that Mr. Helis, Jr. willingly joined the attack on Olivier's overriding royalty interest and the Cutrer title because as manager of the Helis Estate he had a lessee's interest in the case and did not want the Helis Estate to have to contribute to Olivier's overriding royalty payments under the terms of the joint operating agreement.

lease must fail in all respects. He must live with the way he chose to try the lawsuit.

### III.

Some tag ends remain. The part of the judgment requiring Humble to pay interest to Olivier on overriding royalties accrued since 1959 is inconsistent with the court's prior ruling that Humble could not safely make the payments until the title question had been adjudicated. This ruling was not appealed by Olivier. As we must assume that Humble correctly withheld the payments pending the outcome of the title litigation, it follows that interest is not due under Louisiana law. Sohio Petroleum v. V. S. & P. R. R., 1952, 222 La. 383, 62 So.2d 615, 620–621. Proclaiming itself a mere stakeholder, Humble would also have us reverse the trial court's refusal to award it costs and legal fees for the present action. Though costs and attorneys' fees are ordinarily awarded to the disinterested stakeholder in an interpleader proceeding, the matter is ultimately vested within the sound discretion of the trial judge. 3A J. Moore, Federal Practice ¶ 22.16, at 3144–45. We find no abuse of discretion here.

Affirmed in part; reversed in part.