**In the Matter of the Appraisal of ENSTAR CORPORATION.**

Civ. A. No. 7802.

Court of Chancery of Delaware, New Castle County.

Submitted: July 5, 1990.
Decided: March 18, 1991.

Grover C. Brown, Morris, James, Hitchens & Williams, Wilmington (Jay Cohen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for First City Financial Corp., Ltd., First City Trust Co., Marc Belzberg and Abraham Farbstein.

Edmund N. Carpenter, II and Nathan B. Ploener, Richards, Layton & Finger, Wilmington, for Enstar Corp.

HARTNETT, Vice–Chancellor.

After a trial on the issue of whether a January 17, 1986 settlement of this lawsuit was void or voidable, the Court finds that Enstar Corporation, the defendant, has not established the existence of unclean hands or fraud, nor has it made a sufficient showing to justify voiding the settlement because of mistake and therefore the plaintiffs are entitled to a judgment enforcing it.

I

The backgrounds facts, which for the most part are not disputed, have been fully set out in earlier opinions in this case. This action arose as a result of a merger in 1984 between Unimar Subsidiary, Inc. and defendant Enstar Corporation ("Enstar") after which Marc Belzberg, Abraham Farbstein, First City Financial Corp., Ltd., and First City Trust Company (collectively "the Belzbergs"), sought an appraisal of their Enstar shares.

On January 17, 1986, the attorneys for Enstar and the Belzbergs orally agreed to a settlement of this appraisal suit. Shortly thereafter Enstar attempted to void the settlement. In response to a motion for summary judgment by the Belzbergs, this Court in 1989 ruled that a valid and enforceable settlement came into being on January 17, 1986 unless it was void or voidable because of the existence of unclean hands, fraud or, possibly, mistake. *In the Matter of the Appraisal of Enstar Corporation*, Del.Ch., C.A. No. 7802–NC, Hartnett, V.C. (Jan. 31, 1989), 1989 WL 11139. See also *Matter of Enstar Corp.*, Del.Ch., 513 A.2d 206 (1986) and *In the Matter of the Appraisal of Enstar Corporation*, Del.Ch., C.A. No. 7802–NC, Hartnett, V.C. (July 17, 1986), 1986 WL 8062, *rev. sub non., Enstar Corp. v. Senouf*, Del.Supr., 535 A.2d 1351 (1987).

II

As stated, for the most part the facts are not disputed. Where they are disputed, they are found to be as set forth.

On September 24, 1984, Unimar Subsidiary, Inc. was merged with and into Enstar Corporation ("Enstar"). The Enstar shareholders who accepted the merger consideration received $2.00 in cash and one newly issued Indonesian Participating Unit ("IPU") for each Enstar share held on the merger date. The IPU's traded at a high of $11 on the date they were issued and dropped to about $5 as of May 1990. The Belzbergs were among the more than 100 shareholders that rejected the merger consideration and sought an appraisal of their Enstar shares pursuant to 8 *Del.C.* § 262.

On June 11, 1985, in accordance with the pretrial procedures approved by the Court, Enstar filed a Stockholder Information Form in the Office of the Register in Chancery in which it conceded the right of several dissenting shareholders to an appraisal but disputed the right to an appraisal by other dissenting shareholders and set forth the reasons for its objections.

The Belzbergs' 156,828 shares were among those which Enstar denied were entitled to an appraisal. Enstar in its Stockholder Informational Form as filed with the Register, stated that the reason that it contested the Belzbergs' claim was that the Belzbergs' shares were held of record by Cede & Co. and that Cede, as the record owner, had not made a demand for an appraisal. No other claim of ineligibility for an appraisal of the Belzberg shares was stated. The question of whether a demand for an appraisal could be made by a beneficial owner rather than the nominee who appeared as the stockholder of record was still an open question at that time. *Cf., In the Matter of the Appraisal of Enstar Corporation*, Del.Ch., C.A. No. 7802–NC, Hartnett, V.C. (July 17, 1986), 1986 WL 8062, *rev. sub nom., Enstar Corp. v. Senouf*, Del.Supr., 535 A.2d 1351 (1987).

Early in January of 1986, after approximately six months of settlement negotiations, but before any discovery was undertaken, counsel for Enstar, Charles F. Richards, Jr., and Michael D. Goldman, counsel for several dissenting shareholders including the Belzbergs, reached a tentative settlement agreement of the entire appraisal

action. That proposed settlement agreement provided that Enstar would pay $20 per share, plus 10% interest and counsel fees, as to those shares which Enstar conceded were entitled to be appraised. Enstar also agreed to pay the same consideration as to those shares which it did not concede were entitled to be appraised upon the Court finding that the shares were entitled to being appraised.

On January 15, 1986, the Belzbergs, asserting that they had not authorized the settlement on their behalf, rejected the proposed settlement. As a result of this conflict, Mr. Goldman withdrew as Delaware counsel for the Belzbergs, leaving their New York attorney, Richard S. Borisoff, to negotiate with Mr. Richards. The remaining dissenting shareholders accepted the compromise terms which later became the basis for a settlement of their claims which was approved by this Court on June 27, 1986.

On Friday, January 17, 1986, Mr. Borisoff and Mr. Richards negotiated a settlement of the Belzbergs' appraisal claim over the telephone. Mr. Borisoff first proposed that the Belzbergs would receive $20 per share, with no interest, for all their shares. Mr. Richards counter-offered, on a "take-it-or-leave-it" basis, that the Belzbergs receive the original merger consideration of $2 and one IPU per share for 50% of their shares and $20 per share, plus interest, for the remaining 50% of their shares.

After conferring with the Belzbergs, Mr. Borisoff counter-proposed that the Belzbergs receive the original merger consideration for 25% of their shares and the $20 settlement price for 75% of their Enstar shares. Mr. Richards re-emphasized that his 50–50 offer was made on a take-it-or-leave-it basis, which required acceptance that day. After again conferring with the Belzbergs, Mr. Borisoff again called Mr. Richards and told him that his clients would accept the 50–50 offer if the payment of the Belzbergs' counsel fees were included. Mr. Richards agreed. Mr. Richards then restated the terms of the agreement and requested that the Belzbergs' shares be delivered to his office in Wilmington by the following Monday, January 20, 1986. At no time during the course of these negotiations did anyone representing the Belzbergs disclose to Enstar, or its counsel, that the Belzbergs' shares had actually been sent to Enstar in October of 1984.

On Monday afternoon, January 20, 1986, Mr. Richards called Mr. Borisoff to inquire why the shares had not arrived. Mr. Borisoff stated that the shares were at Cede and he would need another day to deliver them.

The next morning, January 21, 1986, Mr. Richards again called Mr. Borisoff asking for the shares. It was during this phone call that Mr. Borisoff revealed for the first time to Mr. Richards that the Belzbergs' shares had been delivered to Enstar in 1984.

On January 24, 1986, after discussing the matter with Enstar, Mr. Richards informed Mr. Borisoff that in view of the developments Enstar was not willing to enter into a compromise or settlement with the Belzbergs on the terms previously agreed upon and considered any agreement "rescinded by its terms."

III

On January 29, 1986, Enstar moved to amend the Stockholder Information Forms previously filed with the Court to add a second objection to the Belzbergs' claim— that the Belzbergs had tendered their shares thereby accepting the merger consideration and were therefore not entitled to an appraisal. The Belzbergs opposed the motion and responded that the tender of their shares was inadvertent and did not affect their right to seek an appraisal. It is not disputed that the Belzbergs' shares were not voted in favor of the merger, which is a statutory prerequisite for seeking an appraisal.

On April 29, 1986, this Court granted Enstar's motion to amend its Stockholder Information Forms to plead the new defense, while reserving decision on the enforceability of the January 17, 1986 compromise and settlement agreement until a

further hearing. *Matter of Enstar Corp.,* Del.Ch., 513 A.2d 206 (1986).

On September 9, 1988, the Belzbergs moved for summary judgment on the issue of enforceability of the January 17, 1986, settlement agreement. In denying that motion on January 31, 1989, this Court found that the January 17, 1986 negotiations, in the absence of the existence of unclean hands, fraud, or mistake, would constitute a binding settlement agreement. However, the Court also found material issues of fact existed as to Enstar's claim of unclean hands, fraud or mistake, which if proven, could invalidate the settlement agreement. *In the Matter of the Appraisal of Enstar Corporation,* Del.Ch., C.A. No. 7802–NC, Hartnett, V.C. (Jan. 31, 1989), 1989 WL 11139.

On May 8–10, 1990, a trial was held on the factual issues remaining after the denial of summary judgment.

### IV

From all the facts adduced at trial, the Court finds that the Belzbergs did not make any affirmative misrepresentation of the facts to Enstar but they never told Enstar that their shares had been sent to Enstar in October 1984 and that the Belzbergs had subsequently received the merger consideration.

The ultimate issue, therefore, is whether the Belzbergs had any legal duty to affirmatively call these facts to the attention of Enstar. If they did, they breached that duty.

To determine whether the Belzbergs had a legal duty to reveal these facts to Enstar it is first necessary to ascertain what was occurring during the January 1986 settlement negotiations.

Enstar, in effect, seems to claim that the issue being resolved by the settlement was the price it would pay for the repurchase of its shares. This is not so, however. What was compromised was the lawsuit in which the Belzbergs were seeking an appraisal of the value of the Enstar shares of stock which they owned prior to the merger.

When viewed in this light, the settlement is not unlike numerous other settlements of lawsuits and the public policy which favors settlement, as well as the other factors, must be considered.

It is unfortunate that when the settlement negotiations took place there existed a possible (but unknown to Enstar's counsel) legal defense to the claims of the Belzbergs—the fact that they had forwarded their shares to Enstar and had received the merger consideration. This fact was known (or should have been known) by Mr. Borisoff but was not known to Mr. Richards, although he could have easily ascertained that fact.

 Generally when a lawsuit is settled, both sides give up something and arguable legal positions and claims are abandoned by both sides. That a compromised legal claim has little or no merit is no reason to set aside a settlement as long as the claim was asserted in good faith. *Rommel v. West American Insurance Co.,* 158 A.2d 683 (D.C.1960). *In the Matter of the Appraisal of Enstar Corporation,* Del.Ch., C.A. No. 7802–NC, Hartnett, V.C. (Jan. 31, 1989), 1989 WL 11139, and the cases cited at pps. 9–11, especially *Corbesco, Inc. v. Local No. 542 Intern. Union of Operating Engineers,* 620 F.Supp. 1239 (D.Del.1985); *Hennessy v. Bacon,* 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890); and *Patterson v. Stovall,* 528 F.2d 108 (7th Cir.1976). I find, from the evidence, that the claims of the Belzbergs were asserted in good faith.

 There are many propitious times for the settlement of a lawsuit. One such time is before discovery, with its burdensome costs, is commenced. If settlement occurs at that time, however, each side necessarily foregoes learning fully all the facts in trade for saving the considerable cost of discovery. It should therefore come as no surprise that sometimes the subsequent learning of additional facts may indicate that the settlement terms, in retrospect, unduly favored one side or the other, but this is not grounds to set aside the settlement.

■ On the other hand, a settlement fatally tainted by unclean hands or procured by fraud must be set aside. *Turchi v. Salaman*, Del.Ch., C.A. No. 11,268, Berger, V.C. (May 14, 1990), 1990 WL 27531.

A settlement resulting from a mistake raises especially difficult issues that relate to whether the mistake was mutual or unilateral or whether the mistake was as to a material fact which was essential to the agreement.

■ While an attorney has duties of fairness to an opposing party and may not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, Enstar has cited no authority which holds that an attorney must affirmatively reveal the weakness of his case to his opponent. *Cf.* D. Rules Prof.Cond. Rule 3.4 and 8.4(d).

With these principles in mind, the Court turns to the contentions of Enstar.

## V

Enstar first claims that the Belzbergs and their lawyers committed fraud when they sat silent "when every sense of honesty would have compelled them to speak" and made false representations which amounted to a fraud. Enstar claims fraud was committed by the Belzbergs (1) when they filed their Stockholder Information Forms with the Court claiming that they should receive payment for their Enstar shares; (2) when Mr. Borisoff made a counter-proposal during the January 17, 1986 telephone negotiations that the Belzbergs would take the merger consideration for 25% of their shares and the settlement price for the other 75% of their shares; (3) when Mr. Borisoff, on January 17, 1986 stated he would deliver the share certificates to Mr. Richards; (4) when Mr. Borisoff on January 20, 1986 stated that the reason for the delay in sending the shares was that the certificates were at Cede; and (5) when Mr. Borisoff telecopied his letter on January 21 requesting payment for Enstar shares "beneficially held" by the Belzbergs.

The Belzbergs counter that they were under no obligation to disclose to Enstar possible defenses to the appraisal action and that, in any event, no fraudulent misrepresentations were made.

From all the evidence I find that Enstar has not borne its burden of showing by a preponderance of the evidence that the Belzbergs committed fraud. The Belzbergs did not have any legal obligation to disclose to Enstar any defenses to the appraisal action. Nor was the action taken by Enstar based on a justifiable reliance on any representations made by the Belzbergs. The elements necessary for fraud therefore have not been proven.

■ Delaware law favors voluntary settlement of disputed cases, *Neponsit Inv. Co. v. Abramson*, Del.Supr., 405 A.2d 97 (1979), although a settlement procured by fraud will, of course, be set aside. *Turchi v. Salaman*, Del.Ch., C.A. No. 11,268, Slip Op. at 10, Berger, V.C. (May 14, 1990), 1990 WL 27531.

■ The elements of fraud are well established: (1) a false representation of material fact; (2) the knowledge or belief that the representation was false, or made with reckless indifference for the truth; (3) the intent to induce another party to act or refrain from acting; (4) the action or inaction taken was in justifiable reliance on the representation; and (5) damage to the other party as a result of the representation. *Nicolet, Inc. v. Nutt*, Del.Supr., 525 A.2d 146 (1987); *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069 (1983). Equity may find fraud even if the representation was made negligently or innocently. *In Re Brandywine Volkswagen, Ltd.*, Del.Super., 306 A.2d 24 (1973), *aff'd* 312 A.2d 632; *Wilmington Sixth District Community Committee v. Pettinaro Enterprises*, Del.Ch., C.A. No. 8668, Hartnett, V.C. (Oct. 27, 1988), 1988 WL 116496. Fraud may arise by way of (1) silence in the face of a duty to speak; (2) false statements represented as truth; or (3) active concealment of facts which prevent the other party from discovering them. *See Stephenson*, supra; *Lock v. Schreppler*, Del. Super., 426 A.2d 856, 861 (1981).

■ Generally, however, mere silence will not constitute fraud because there is no duty to disclose a material fact known by one party, which may cause the other party not to enter the contract, unless the law imposes a duty to speak. *Nicolet,* supra; *Stephenson,* supra; *Leech v. Husbands,* Del.Super., 152 A. 729, 732 (1930). The duty to speak arises from a contractual or fiduciary relationship or when disclosures are necessary to prevent statements actually made from being misleading. *Nicolet,* supra; *Stephenson,* supra.

This reasoning is consistent with holdings in other jurisdictions. *See Stoufflet v. Duplantis,* 208 La. 186, 23 So.2d 41 (1945), *reh'g denied.* ("We know of no law which requires an attorney to reveal [to the opposing party] information which he has secured for his client."); *Gilliland v. Mt. Vernon Hotel Co.,* 51 Wash.2d 712, 321 P.2d 558, 561 (1958) ("One is entitled to keep his affairs to himself unless, by reason of some special circumstance, the law imposes a duty to speak ... Where there is no duty to speak, silence cannot be termed 'suppression', and is not fraud.")

■ In the present action, the Belzbergs did not stand in a contractual or a fiduciary relation to Enstar; therefore they owed no legal duty to disclose the fact that their shares had been surrendered to the corporation, even though this non-disclosed fact might have caused Enstar not to agree to settle the lawsuit, and thus no fraud could have occurred.

Additionally, the statements made to Enstar prior to the settlement agreement were not misleading. Enstar claims that the Belzbergs made misleading statements when they filed their Stockholder Information Form and when Mr. Borisoff made a counter-proposal during settlement negotiations requesting payment for the Belzbergs' shares, despite the fact that the Belzbergs had already received the merger consideration for their shares.

As of January 1986, however, a mistaken tender of shares to the corporation did not necessarily preclude the shareholder from seeking an appraisal for the shares he held on the date of the merger. *Cf. Matter of*

*Enstar Corp.,* Del.Ch., 513 A.2d 206 (1986); *In the Matter of the Appraisal of Enstar Corporation,* Del.Ch., No. 7802–NC, Hartnett, V.C. (July 17, 1986), 1986 WL 8062, *rev. sub. nom., Enstar Corp. v. Senouf,* Del.Supr., 535 A.2d 1351 (1987). The Belzbergs could therefore have, at least arguably, claimed they were entitled to pursue their appraisal action when they filed their Stockholder Information Form and when they engaged in settlement negotiations.

Mr. Borisoff's counter-proposal was actually an offer to settle the lawsuit for a certain sum of money, the exact amount to be determined by a simple mathematical calculation. His counter-offer was therefore not legally misleading. Nor is there anything in the record to support a finding that the Belzbergs intended to receive a double payment (the merger consideration plus the settlement price), as Enstar suggests.

Enstar also contends that Mr. Borisoff made a misrepresentation when he stated to Mr. Richards on January 17, 1986 that he would deliver the Belzbergs' certificates to Enstar. This statement was immaterial, however, and therefore could not have been relied upon by Enstar to its detriment because the negotiations between Mr. Richards and Mr. Borisoff were for the settlement of a lawsuit, not for the sale of the shares. As held in *In the Matter of the Appraisal of Enstar Corporation,* Del. Ch., C.A. No. 7802–NC, Hartnett, V.C. (Jan. 31, 1989), 1989 WL 11139, the negotiations resulted in an agreement for the settlement of the appraisal action, for which the consideration was the release of a legal claim, not the sale of shares. Furthermore, Mr. Richards testified at his deposition that the only reason for requiring the return of the stock certificates to Enstar was to ensure that the Belzbergs would not back out of the settlement agreement. Therefore the statement relating to the surrender of the certificates was legally immaterial and could not have been an essential fact relied upon by Enstar.

Enstar also contends that misrepresentations were made by Mr. Borisoff when, on

January 20, 1986, he stated that the stock certificates were at Cede and when he telecopied a letter on January 21, 1986 to Mr. Richards demanding payment for the shares "beneficially held" by the Belzbergs. These statements were made after the settlement agreement had come into being, however. Enstar therefore could not have justifiably relied on them in agreeing to the settlement. Enstar has therefore failed to establish the necessary element of reliance to support its fraud claim.

Nor is there any evidence to indicate that the Belzbergs did anything to actively conceal the fact that the shares had been sent to Enstar.

Enstar admits that it never made any investigation to discover the true facts and it concedes that if such an investigation had been conducted, it would have discovered that Cede, the record owner, did not hold sufficient shares to cover all the shares for which it had sought appraisal. This would have put Enstar on notice that some of the shares for which an appraisal was sought had actually been tendered for the merger consideration. Enstar responds to these facts, by taking the position that it had no duty to conduct such an investigation.

While Enstar may not have had any duty to conduct an investigation, it cannot claim that the Belzbergs concealed facts from it which it did not even attempt to ascertain. Enstar could not have reasonably expected the Belzbergs to disclose a possible defense to their appraisal claim, when the Belzbergs had no legal duty to do so.

In summary, the Belzbergs had no legal duty to disclose to Enstar a possible legal defense to the lawsuit. The statements made by the Belzbergs were also not misleading in a legal sense nor has Enstar shown that the Belzbergs actively concealed any facts. Enstar therefore has not borne its burden of showing by a preponderance of the evidence that the settlement agreement was procured by fraud. *Nye Oderless Incinerator Corp. v. Felton,* Del. Super., 162 A. 504, 510 (1931).

## VI

Perhaps the most difficult issue is Enstar's claim that the existence of mistake invalidates the settlement agreement. Enstar first claims that the agreement to settle should be rescinded because the negotiations were conducted under a mutual mistaken assumption that the Belzbergs had not tendered their Enstar shares and the merger consideration had not been received by them.

The Belzbergs counter that no mutual mistake occurred because Mr. Borisoff testified that on January 17, 1986 he had "forgotten" that the Belzbergs' shares had been surrendered for the merger consideration and that in any case he did not regard it as relevant to the settlement negotiations. The Belzbergs also assert that even if a mutual mistake existed at the time of the January 1986 negotiations, the mistake was neither material nor essential to the settlement; therefore the agreement should not be rescinded.

An agreement may be rescinded if both parties were mistaken as to a material fact which was essential to the agreement. *McGuirk v. Ross,* Del.Supr., 166 A.2d 429 (1960); *Sussex Life Care Assoc. v. Strickler,* Del.Ch., C.A. No. 911–K, Berger, V.C. (June 13, 1989), 1988 WL 156833. A mistake is a belief that is not in accord with the facts. *Restatement 2d of Contracts* § 151 (1979). The mistake must be shown by clear and convincing evidence. *Craft Builders, Inc. v. Ellis D. Taylor, Inc.,* Del. Supr., 254 A.2d 233, 235 (1969); *Walsh v. Bailey,* Del.Supr., 197 A.2d 331, 333 (1964).

To warrant equitable relief, however, the mistake must go to the basic assumption of the contract and not merely to an incidental fact. It must have had a material effect on the agreed exchange of performances of the parties. *Grymes v. Sanders,* 93 U.S. 55, 23 L.Ed. 798 (1876); *Shore Builders v. Dogwood, Inc.,* D.Del., 616 F.Supp. 1004 (1985). Materiality is to be determined in light of the surrounding circumstances, taking into consideration that the party complaining of mistake must have exercised at least a degree of diligence which

would be fairly expected of a reasonable person. *Grymes,* supra.

I find that the mistake was not essential to the settlement and that, in any case, Enstar did not exercise the diligence of a reasonable person in seeking to ascertain whether the shares had been tendered.

The basic predicate of the settlement agreement was that the Belzbergs would relinquish all their legal claims against Enstar, without regard to whatever merit they may have had, and Enstar would pay to the Belzbergs an agreed sum. The release of the lawsuit is what the parties were bargaining for—not the sale of the shares.

Additionally, Enstar did not attempt to ascertain if the Belzbergs still held the shares. It therefore did not use the diligence which would be expected of a reasonable person. *Grymes,* supra. The fact that the shares had been surrendered to Enstar was therefore not material to the agreement to settle and Enstar is not able to rescind the settlement agreement because of a mutual mistake.

## VII

 It seems clear that Mr. Richards was negotiating under the mistaken belief that the Belzbergs still possessed their shares. Enstar therefore also argues that it would be unconscionable to enforce the agreement to settle because this unilateral mistake relates to the substance of the consideration for the settlement agreement. In support of that position, Enstar asserts that the Belzbergs were not entitled to an appraisal because they no longer owned the shares which were the very property to be surrendered for the settlement and that the mistake occurred notwithstanding the exercise of ordinary care by Enstar.

Absent fraud or some other equitable consideration, however, a unilateral mistake generally will not invalidate a compromise and settlement. *In the Matter of the Appraisal of Enstar Corporation,* Del. Ch., C.A. No. 7802–NC, Slip Op. at 10, Hartnett, V.C. (Jan. 31, 1989), 1989 WL 11139 and the cases cited therein. Other equitable considerations, however, if present, may require that an agreement be rescinded, because of the presence of unilateral mistake. They are: (1) the enforcement of the agreement would be unconscionable; (2) the mistake relates to the substance of the consideration; (3) the mistake occurred regardless of the exercise of ordinary care; and (4) it is possible to place the other party in status quo ante. *Aetna Casualty and Surety Co. v. LaFazia,* Del. Ch., C.A. No. 6567–NC, Brown, C. (Nov. 3, 1982).

The transfer of the share certificates, however, was not the consideration given for the settlement agreement. The consideration given by the Belzbergs for entering into the settlement was the relinquishment of their claims in a lawsuit, regardless of its merit. Therefore, Mr. Richards' mistake as to the location of the share certificates did not relate to the substance of the consideration. The lack of reasonable diligence on the part of Enstar also precludes the rescission of the settlement agreement because of unilateral mistake.

From all the evidence, the Court also concludes that it would not be unconscionable to enforce the settlement agreement.

## VIII

 Enstar next contends that the merits of the Belzbergs' claims need not be considered because the Belzbergs are barred from recovery by the doctrine of unclean hands.

This doctrine holds that a party seeking relief in an equity court must do so with "clean hands". It is a rule of public policy which protects the courts against misuse. *Electrical Research Products v. Vitaphone Corp.,* Del.Supr., 171 A. 738, 749 (1934); *Bodley v. Jones,* Del.Supr., 59 A.2d 463, 469 (1947); *Skoglund v. Ormand Industries, Inc.,* Del.Ch., 372 A.2d 204, 213 (1976); *Cook v. Fusselman,* Del.Ch., 300 A.2d 246, 251 (1972). A litigant who engages in reprehensible conduct in relation to the matter in controversy, therefore, forfeits his right to have the court hear his

claim, regardless of its merit. *Skoglund, supra.*

Enstar claims that the Belzbergs were guilty of unclean hands in that: (1) they concealed that they did not own the shares they were allegedly purporting to sell to Enstar; (2) they mislead the Court in that they filed false and incomplete Stockholder Information Forms; and (3) their counsel remained silent during the settlement negotiations as to whether the Belzbergs still held their shares.

The Belzbergs counter that they committed no wrongs which could require the imposition of this doctrine on them and that to apply this doctrine to them would be contrary to the public policy favoring the voluntary settlement of litigation.

The Court finds that the doctrine of unclean hands does not bar the Belzbergs because, as previously discussed, in January 1986 the Belzbergs were not selling their shares to Enstar, they were negotiating at arms-length in an attempt to settle a lawsuit. They therefore had no legal duty to volunteer to Enstar the information that the shares they owned had been previously surrendered by them to Enstar. Nor did they file a misleading Stockholder Information Form because when the form was filed the Belzbergs were arguably still entitled to an appraisal.

Nor was there any other evidence presented which could justify a finding of such unclean hands as would preclude the Belzbergs' claims.

### IX

Lastly Enstar argues that no contract was formed on January 17, 1986 because the critical terms were not agreed upon. This argument was disposed of by the holding in *In the Matter of the Appraisal of Enstar Corporation,* Del.Ch., C.A. No. 7802–NC, Hartnett, V.C., 1989 WL 11139 (Jan. 31, 1989), where it was held that a binding contract was entered into on that date unless Enstar could show fraud, mistake or unclean hands. As noted in that opinion, the Court denied the Belzbergs' motion for summary judgment because of questions of fact as to the existence of fraud, mistake, or unclean hands, although it found that the other assertions of Enstar were without merit as a matter of law.

Pursuant to Chancery Rule 56(d), on March 9, 1990, this Court, over the objection of Enstar, limited the trial to the unclean hands, fraud or mistake issues which were not disposed of in the January 31, 1989 opinion.

At trial, however, the Court permitted Enstar to fully adduce all the evidence as to the events of January 1986. Enstar also revisited the issue as to whether an agreement to settle came into being on January 17, 1989 in its post-trial briefing. Nothing adduced at the trial nor contained in the post-trial briefs gives any basis to change the rulings contained in the January 31, 1989 opinion.

### X

At the conclusion of plaintiffs' case at trial, Enstar moved to dismiss. Pursuant to Chancery Rule 41(b) the Court declined to render any judgment on the motion until the close of all the evidence and Enstar proceeded to present its evidence. Enstar now, after trial, argues that the motion should still be granted.

When a motion to dismiss is made at the end of the plaintiffs' case in chief, the role of the Court, in a non-jury case, is to determine if the evidence was sufficient to go to the jury, if the case was a jury case. *Science Accessories Corp. v. American Research & Development, et al,* Del.Ch., C.A. No. 4324–NC, Hartnett, V.C. (Oct. 9, 1978), 1978 WL 4983, citing *Federal Deposit Ins. Corp. v. Mason,* 115 F.2d 548 (3rd Cir. 1940); MOORE'S *Federal Rules of Civil Evidence,* § 41.13(4).

At the end of the Belzbergs' case, if all of the evidence which had been presented was believed and all inferences were drawn in the Belzbergs' favor, there was clearly sufficient evidence for the case to have gone to a jury if this had been a jury trial. Therefore, defendant's motion to dismiss was, and is, without merit.

If a Court declines to rule on a Rule 41(b) Motion to Dismiss made at the end of plaintiff's case and then proceeds to hear the remainder of the evidence, the Court may consider all the evidence adduced at the trial in reaching its ultimate decision on the merits. 9 WRIGHT & MILLER, *Federal Practice and Procedure:* Civil § 2371.

From all the evidence the Court concludes that the Belzbergs are entitled to enforce the agreement of settlement entered into on January 17, 1986.

The plaintiff shall promptly submit a proposed order.