HIGGINS, Justice.
 

 The plaintiff' brought this action to cancel an oil and gas lease on all of the land involved, except eighty acres situated around one producing gas well on the leased premises. The defendant, to which the lease had been granted, answered and denied that the plaintiff had the right to cancel any part of the lease and averred that by the terms of a supplemental agreement between the parties the lease on 240 acres was not subject to cancellation as long as oil or gas was being produced in paying quantities on any part of the property.
 

 The district judge construed the provisions of the lease as amended according to the version of the defendant and rejected the plaintiff’s demand. She appealed.
 

 The plaintiff, as owner and in possession of her separate and paraphernal property, consisting of 520 acres, on July 16, 1930, granted an oil and gas lease thereon in favor of the Pyramid Oil and Gas Company, Inc. On December 8, 1930, the Pyramid Company assigned its rights in the lease on 220 acres to the Junior Oil and Gas Company, Inc. The Pyramid Company drilled two producing gas wells and the Junior Company produced one gas well within the time stipulated in the original lease, but thereafter no other wells were drilled.
 

 A controversy arose between the plaintiff and these companies as to certain pro
 
 *423
 
 visions in the lease, particularly the following :
 

 (1) “This lease shall remain valid and subsisting so long as gas is produced from said land by lessee * * *
 

 (2) “It is agreed that this lease shall remain in force for a term of five (5) years from this date, and so long thereafter as oil and gas, or either of them, is produced from said land by the lessee
 
 *
 
 * *
 

 It appears that one of the wells drilled by the Pyramid Company and the well drilled by the Junior Company ceased to produce and were abandoned and that neither company, within six (6) months thereafter, attempted to drill any more wells, contending that the production of gas from the land by the remaining well was sufficient to keep the lease in effect.
 

 The plaintiff took the position that the lease required the lessee to drill at least one producing well for each eighty (80) acres of the tract, the pertinent part of the clause reading as follows:
 

 “If gas is discovered in paying quantities upon the above described land, the lessee shall commence the drilling of another well for gas within six (6) months after the completion of the discovery well; and in like manner, at intervals of six (6) months lessee shall drill additional wells for gas until there shall have been drilled upon the premises at least one well for each eighty acres * * *
 

 In order to settle the dispute, on August 4, 1933, the plaintiff entered into a supplemental agreement with the Pyramid and the Junior Companies, amending the terms of the lease, whereby the Pyramid and Junior Companies released unto the plaintiff 280 acres of land covered by the original lease, the Pyramid Company retaining 160 acres and the Junior Company 80 acres. The agreement provides that the original lease “shall remain valid and subsisting so long as oil or gas, or either of them, is produced from any part of said land”.
 

 The description of the respective acreage retained by the two companies immediately follows the above clause.
 

 Prior to entering into the supplemental agreement, modifying the original lease, there was. certain correspondence between the plaintiff’s attorney and the defendant’s representative, in which the question presented for decision here was raised. On July 20, 1933 the plaintiff’s attorney wrote the defendant’s representative as follows:
 

 “Mr. and Mrs. Breard are very anxious to close this matter and have made up tffeir minds to accept the basis of settlement of it as discussed with you, but they do not think that the contract which you have sent is just exactly what was agreed to or just exactly what ought to be done;
 

 “In the last paragraph of the first page, running onto the second page, you provide, after having Mrs. Breard, confirm and acknowledge the lease, in so far as it covers the land which you are to retain, that it shall remain valid and subsisting
 

 “ ‘So long as oil or gas, or either of them, is produced in paying quantities from any part of said land’.
 

 “The original lease did not provide this, nor did the original agreement contem
 
 *425
 
 plate, nor did the agreement for an amendment of the lease contemplate or intend that you should do this.
 

 “Each eighty acres stands to itself under the original lease and under the intention of agreement for the amended lease and your amendment should be rewritten and so written as to provide that the lease on each eighty acres shall remain valid and subsisting so long as oil or gas, or either of them, is produced in paying quantities from each of the said eighty acres.”
 

 The court in interpreting controversal clauses in contracts is guided by the interpretation the parties themselves place upon the agreement. After the plaintiff insisted that the original lease required the defendant to drill one producing well on each 80 acres of the tract in order to keep the lease alive, she signed a supplemental agreement, which modified the original lease, confirming the position of the defendant that the lease would be continued as long as oil or gas was produced in paying quantities from any part of the property. Therefore, it appears to us that even though two of the wells ceased to produce and were abandoned, since the remaining one is producing gas in paying quantities, the defendant has fulfilled the requirements of the lease as modified by the supplemental agreement.
 

 It is also argued that the two companies, being separate entities, and the Pyramid Company, having assigned the lease insofar as it affects certain acreage to the Junior Company, that the producing well of the Pyramid Company did not keep the lease in' effect as far as the acreage assigned to the Junior Company was concerned, because its well was abandoned and a new well was not drilled within six (6) months thereafter. It was shown that the majority of the stock of the Junior Company was owned by the Pyramid Company and when the former corporation became involved, it reassigned its portion of the lease to the parent company in consideration of the indebtedness, which the Junior Company owed it. The Junior Company thereafter was dissolved. While the plaintiff in her petition alleges this was a simulated transfer, nothing is said about this point in the opinion of the judge a quo, or in plaintiff’s brief filed here, and our view of the record is that she failed to prove that allegation of her petition.
 

 Plaintiff finally contends that the supplemental agreement was null for lack of consideration. There was a dispute bepretation of the provisions of the original tween the parties as to the correct inter-lease and, in consideration of making them clear in accordance with the defendant’s understanding thereof, the lessees surrendered all of their rights to explore for oil and gas on the 280 acres of the lease property. Furthermore, the mere advantage of certainty with reference to controverted rights of the parties constituted a sufficient consideration for the amendment. Harris et al. v. United Gas Public Service Company et al., 181 La. 983, 160 So. 785.
 

 The amendatory agreement was a settlement and delineation of the rights of the parties and, no fraud or error being alleged with reference to entering into this agreement, it will not be disturbed. Sell
 
 *427
 
 wood v. Phillips et al., 185 La. 1045, 171 So. 440.
 

 For the reason assigned the judgment of the lower court is affirmed at appellant’s costs.
 

 ODOM, J., takes no part.