26 So.2d 366

BOOK et al. v. SCHOONMAKER.

No. 37983.

April 22, 1946.

Cawthorn & Golsan, of Mansfield, for plaintiffs-appellants.

Craig & Magee, of Mansfield, for defendant-appellee.

HAMITER, Justice.

A written contract was entered into on April 27, 1944, by and between F. A. Book and G. C. James of ElDorado, Arkansas, on the one hand (referred to as contractor), and G. C. Schoonmaker of Evansville, Indiana, on the other hand (referred to as owner), by the terms of which the contractor agreed to drill for the owner a well in search of oil or gas at a selected location in DeSoto Parish.

The contractor undertook to furnish "everything necessary, including all labor, water and supplies except services specifically hereinafter to be furnished by the owner." Among the excepted services was that mentioned in the following provision, exceedingly important in the determination of this litigation, namely: "Owner shall furnish to contractor gas for fuel from owner's well on the Anders farm, about one and one-half miles west of the location herein, contractor to lay and make connections to said gas well at his own risk and expense."

The contract further provided: "Owner shall pay to contractor for the drilling of the well herein provided, the sum of Twenty two thousand five hundred and no/100 Dollars, ($22,500.00) plus the sum of Six and no/100 Dollars ($6.00) per foot for any hole drilled below 5,000 feet, and not deeper than 5,300 feet, and such extra rig time as hereinafter provided, upon completion of contractor's obligation hereunder."

The referred to extra rig time (several possible forms were detailed) was valued by the parties at $15 per hour.

Drilling operations under the contract began on June 1, 1944, and continued until

the early part of August, 1944, when the agreed depth of the well was reached, at which time the contractor was paid the stipulated sum of $22,500. Meanwhile, during the course of the drilling, the owner advanced to the contractor the additional sum of $1250 (two payments of $750 and $500, respectively), this item being more fully discussed hereinafter.

On or about August 21, 1944, the contractor (then F. A. Book and J. H. Trotter, the latter having previously acquired the interest of G. C. James) sent to the owner a statement of account claiming a balance due and owing under the contract by the latter of $5071.92. This statement listed various extra services and materials furnished in connection with the drilling of the well, and also the above-mentioned credit of $1250.

Upon the owner's disputing the correctness of several of the items charged to him, the contractor recorded in the mortgage records of DeSoto Parish an instrument giving notice of a claim to a lien and privilege under the provisions of Act No. 68 of 1942. Thereafter F. A. Book and J. H. Trotter (the contractor) instituted this suit against Schoonmaker (the owner) to recover judgment for the alleged indebtedness of $5071.92, and, in connection therewith, obtained the issuance of a writ of provisional seizure.

The defendant answered admitting an indebtedness of $122.19, this representing

certain charges totaling $1372.19 less the advance on the contract of $1250. Defendant denied owing the remaining charges totaling $4949.73, which, according to the notice of lien filed and the itemized statement attached to plaintiffs' petition, were for:

Down time caused by lack of fuel $1755.00
Fuel oil purchased by contractor   3194.73
                                   ---------
                                   $4949.73

Plaintiffs' position in the suit, with reference to these two disputed items, is that under the contract defendant obligated himself to furnish all of the fuel required in drilling; that the gas supply from the owner's well on the Anders farm was insufficient for carrying on the work and defendant failed to otherwise provide fuel; and that, because of such insufficiency and failure, the drilling rig had to be shut down a total of 117 hours with a resulting loss to the contractor of $1755 ($15 per hour), and also the purchasing of fuel oil costing $3194.73 was necessary.

In denying liability for the two items the defendant, to quote from the brief of his counsel, offers two reasons:

"1. That the contract sued on and especially the clause relied on by plaintiffs-appellants do not provide that he shall furnish all of the fuel necessary for the drilling of the well, but simply such gas as would be furnished by the well on the Anders farm and known as the Anders well.

"2. That the failure of a sufficient supply of gas from the Anders well with which to drill the Anthony well was the fault of the plaintiffs-appellants and not his fault."

In reconvention defendant prayed for judgment against the plaintiffs for $7800 as damages resulting to the Anders well, this representing the cost to him of reconditioning it.

The district judge, after a trial of the merits, rendered judgment in favor of plaintiffs for $684.69 (as well as costs of court) which is for the following items:

| | |
|---|---|
| Balance admitted to be unpaid | $122.19 |
| Thirty-six hours shut down time at $15.00 per hour | 540.00 |
| Fee for preparing and filing lien claim | 15.00 |
| Cost of filing lien | 7.50 |

Defendant's reconventional demand was rejected.

Appeals from the judgment were perfected by both plaintiffs and defendant.

Defendant has since abandoned the reconventional demand, his counsel conceding here, in oral argument and in brief, that the evidence adduced during the trial of the case is not sufficient to sustain it. Serious and strong complaint is made, however, about the award to plaintiff of shut down time.

With reference to the main demand, counsel for plaintiffs, in their brief, call attention to the admissions made in defendant's answer and then comment: "As a result of this as is shown by the above computation the defendant has admitted an indebtedness of $122.19 in excess of the $1250.00 which he has paid. Accordingly, the issues of the case are reduced to the denial by the defendant of owing the down time shown in Item IV of the statement * * * and the cost of fuel oil shown in Item VIII of the statement * * *." Further, counsel state:

"The only legal question presented by the issues in this case is an interpretation of the contract which existed between the parties. As a matter of fact there is only one clause to be interpreted, though another relates to it and explains it. The clause to be interpreted and applied to the facts in the case is the following:

"'Owner shall furnish to contractor gas for fuel from owner's well on the Anders farm, about 1½ miles West of the location herein, contractor to lay line and make connections to said gas well at his own risk and expense.'"

At the outset it is to be observed that if by the controversial clause the parties intended that defendant should furnish only such gas as was available from the Anders well which he owned (the interpretation placed on the clause by the district judge), clearly defendant is not responsi-

ble for any of the disputed charges, not even the thirty-six hours shut down time at $15 per hour which has been awarded plaintiffs. The only shut down time claimed by plaintiffs and disputed by defendant is that listed in Item IV of the statement (above referred to) attached to and made a part of the petition, and in that item it is described as "Down time caused by lack of fuel." Furthermore, all of the evidence in the record relating to shut down time is restricted to that resulting from the lack of fuel.

If, on the other hand, the clause is to be interpreted favorably to plaintiffs, they are entitled to recover not only for all of the shut down time claimed (117 hours at $15 per hour) but the fuel oil purchased by them as well. The matter of plaintiffs having sustained those losses is conceded; the defense is solely a denial of liability therefor.

When the clause in question (above quoted) is analyzed it does not appear that defendant obligated himself, as' plaintiffs contend, to provide all of the fuel required for drilling. He agreed, under the provision, to "furnish to contractor gas for fuel." Then, seemingly, he placed a limitation on this obligation by specifying the source of the gas, it being "from owner's well on the Anders farm, about one and one-half miles west of the location herein." Important to notice too, in making the analysis, is the fact that the duty of

transporting the gas to the situs of the drilling operations did not even devolve upon defendant; the written agreement provided for the "contractor to lay line and make connections to said gas well at his own risk and expense."

Of course, it can be supposed that both parties, in entering into the contract, expected that the Anders well would provide ample gas for the drilling venture. Further, a logical assumption is that had the contractor anticipated the inadequacy of the gas supply and the necessity of purchasing fuel oil a larger monied consideration would have been demanded for the drilling. Nevertheless, the written agreement contains no specific provision obligating defendant to furnish fuel oil if the gas well failed. Neither is it certain that he would have contracted with plaintiffs at a greater drilling cost.

If it be assumed, however, that the clause in question does not itself clearly disclose what the parties had in mind, their intention may and can be determined by the manner in which operations under the agreement were conducted. R.C.C.Article 1956 provides: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

The uncontradicted testimony of defendant Schoonmaker is that on July 21, 1944,

Mr. Book telephoned him in Evansville, Indiana, stating that the Anders gas well had failed and drilling operations had been carried on with fuel oil. To quote defendant:

"Mr. Book called me and told me that the gas well had gone dead some days before and that he had been buying fuel oil. That he had run out of money to buy any more fuel oil and that unless I could give him some money he was going to be out of—that he was going to have to shut the well down. I told him on the phone that I assumed no liability for fuel oil but that if it would help him out, and he could not do otherwise, I would advance him some money on the contract. I asked him how much he needed to keep going until he could locate Mr. Trotter.

*     *     *     *     *

"I asked why Mr. Trotter did not advance some money and he said that Mr. Trotter could not be located and that he was in a jam. If I would advance Seven Hundred Fifty ($750.00) Dollars he could keep the well going until he could locate Mr. Trotter. I asked how much money he needed. He said he needed Seven Hundred Fifty Dollars."

Defendant made the advance of $750 by honoring a draft drawn on him.

To quote further from defendant's testimony: "Toward the end of the well, while I was watching the completion of the well during the coring, Mr. Book came up to me at the location and said that the fuel oil man would not deliver any more fuel oil without any money. He said he didn't have any money and he wondered would I help him out again. I told him if it would help him out that I had Five Hundred ($500.00) Dollars in my pocket and I would give it to him to let him pay his fuel man so we could complete the well. At that time I asked Mr. Book to sign me a receipt for the Five Hundred ($500.00) Dollars, and the receipt will show the date that I gave it to him."

The receipt to which reference is made reads:

"—— C. Schoonmaker,
1634 Washington Youree Hotel,
Shreveport, La.
"Please pay to C. W. Winslepp, for fuel oil, the sum of Five hundred Dollars and apply same as payment on contract with Book & James.
                  "F. A. Book."

Mr. Book was a witness during the trial of the case and did not dispute any of the testimony given by defendant concerning their conversations and the advancing of the $1250. From that testimony, and also the quoted receipt signed by Book, it appears that the parties, in the execution of their agreement, considered the providing of fuel oil to be a responsibility of the contractor.

We conclude, therefore, that under the contract defendant's obligation was to furnish only such gas for fuel as the Anders well would produce. From this it follows that plaintiffs cannot recover herein for the shut down time caused by the lack of fuel nor for the fuel oil which they purchased.

Defendant's second defense, which is that the failure of a sufficient supply of gas from the Anders well was due to the fault of plaintiffs, need not be considered in view of our announced conclusion.

On what basis the district court made an award to plaintiffs of thirty-six hours shut down time at $15 per hour is not known to us. No written reasons therefor were assigned. The only shut down time in dispute in the case, as shown by the pleadings and by the arguments of counsel for both litigants, is that caused by lack of fuel. For it, as above pointed out, defendant is not responsible. Hence, that item must be deleted from the judgment.

For the reasons assigned the judgment of the district court is amended by reducing the award in favor of plaintiffs from $684.69 to $144.69; and as amended the judgment is affirmed. Costs of the appeal shall be paid by plaintiffs.

O'NIELL, C. J., absent.

ROGERS, J., takes no part.