135 So.2d 54

**Mrs. Marie Amlie Dupuy ELLIOTT et al.**

**v.**

**August C. DUPUY et al.**

No. 45595.

Nov. 6, 1961.

Rehearing Denied Dec. 11, 1961.

Maurice G. Indest, New Orleans, for plaintiffs-applicants.

Reginald T. Badeaux, Jr., New Orleans, for defendants-appellees.

HAWTHORNE, Justice.

Plaintiffs instituted this suit for specific performance of two contracts in which they had agreed to purchase and defendants had agreed to sell certain land.[1] Alternatively they prayed for damages for breach of contract. The suit was dismissed by the district court on exception of no cause of action, and this judgment was affirmed by the Fourth Circuit Court of Appeal. See 127 So.2d 260. On application of plaintiffs we granted a writ.

It is well settled that an exception of no cause of action addresses itself to the sufficiency in law of the petition and is triable on the face of the papers; that for the purpose of determining the issues raised by this exception, the well pleaded facts in the petition and any annexed documents must be accepted as true, and that a suit will not be dismissed on exception of no cause of action if allegations of fact set forth a cause of action as to any part of the demand. Spiers v. Davidson, 233 La. 239, 96 So.2d 502, and cases there cited. See also Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632. With this principle of law in mind, let us now consider plaintiffs' original and amended petitions and the documents annexed.

On April 17, 1958, in two identical written contracts the defendants, August C. Dupuy and Louis E. Dupuy, offered to sell and convey to the plaintiffs, Mrs. Marie Amlie Dupuy Elliott, Mrs. Marie Louise Dupuy Jacobs, and Mrs. Marguerite M. Dupuy Fowler, their undivided interests in tracts

1. The property consisted of four lots in Orleans Parish and one in Jefferson Parish.

of land therein described for $19,000 cash to each. On the same day plaintiffs accepted this offer in writing and deposited with defendants agent and attorney in fact $3,800 pursuant to the provision in each contract that "If this offer is accepted, the purchasers must deposit with seller or seller's attorney in fact, Reginald T. Badeaux, Jr., 402 Delta Building New Orleans, Louisiana, ten (10%) percent of purchase price, amounting to One Thousand Nine Hundred And No/100 ($1,900.00) Dollars". Each of these contracts also contained the following provision:

"Act of sale at expense of purchasers to be passed before purchasers' notary on or prior to May 17, 1958, providing that if bona fide curative work in connection with title is required, the parties herewith agreed to and do extend the time for passing of act of sale by thirty days."

On May 17, the date for executing the acts of sale, the parties signed a written agreement stating that they " * * * for the same consideration originally recited in said contract, extend the time for passage of said act of sale before the notary for Home Building and Loan Association from May 17, 1958 to and including May 31, 1958."

The pertinent allegations of fact are set out in the original and amended petitions as follows:

Time for passage of the acts of sale was extended from May 17 to May 31 in order that the title examination for plaintiffs might be completed. In the latter part of May a serious defect in the title was discovered requiring bona fide curative work on the title, and as a result the 30-day extension of time for passing of title came into effect, automatically extending the time for executing the acts of sale to June 30, 1958. Petitioners' application for a loan was approved by the Home Building and Loan Association in the latter part of May for an amount sufficient to pay the balance of the agreed purchase price, and the notary before whom the acts of sale were to be passed ordered conveyance, mortgage, paving, and tax certificates, which were delivered to him in the early part of June.

The curative work on the title was completed early in June, and on June 18 the attorney for the plaintiffs informed the defendants' attorney, who was also their attorney in fact, that plaintiffs were willing, able, and ready to execute and complete the acts of sale at 2:00 p. m. on June 19. The defendants' attorney in fact at that time told plaintiffs' attorney that the passing of the acts of sale on this date would not be possible. Other dates were suggested for passing of title, but the parties could not definitely agree on a specific date. On or about June 26 or 27 the plaintiffs' attorney informed the defendants' attorney in fact by leaving a message with the latter's

secretary that June 30 at 9:00 a. m. was fixed for passing the acts of sale, and that plaintiffs were ready, willing, and able to take title. Later that day the secretary of the defendants' attorney in fact telephoned plaintiffs' attorney and informed him that she had been instructed by her employer to tell plaintiffs' attorney that the acts of sale could not be passed on June 30 because the defendants' attorney had a special fixing that day for the trial of a case before a jury in the civil district court and his clients refused to execute the acts of sale unless he could be present. Thereupon the plaintiffs' attorney requested that the defendants' attorney telephone him. At the same time he informed the secretary that plaintiffs expected defendants to appear in the notary's office for passage of the acts of sale at the appointed time on Monday, June 30; that the acts would be passed at this time but that the notary would retain them in his possession without registering them until the following day so that the attorney for defendants might have an opportunity to examine these acts, and that they would not be recorded until the attorney for defendants had examined them. The defendants did not appear at the notary's office for the passage of the acts on June 30.

The Court of Appeal held that the 10 per cent deposits made by plaintiffs in this case were earnest money, and that accordingly, under the provisions of Louisiana Civil Code Article 2463 and decisions of the courts of this state, plaintiffs were not entitled to specific performance.[2] Plaintiffs-relators concede this holding to be correct, and the question of their right to specific performance is not an issue here. We must determine, however, whether plaintiffs' petition has alleged a cause of action on their alternative demand for damages. On this phase of the case the Court of Appeal concluded that plaintiffs had not alleged facts which would entitle them to double the deposits because the petition did not disclose that plaintiffs had placed the defendants in default, as is necessary before a party to a commutative contract can claim damages for its passive breach.

To decide whether plaintiffs have stated a cause of action on their alternative demand for damages we must first determine the expiration date of the contracts. It is defendants-respondents' contention that in these agreements to buy and sell real estate time was of the essence of the contracts, that the contracts terminated on May 31, that plaintiffs' petition discloses that they permitted this date to pass without taking any action, and that accordingly they

2. Article 2463 provides: "But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promises; to wit: he who has given the earnest by forfeiting it; and he who has received it, by returning the double."

cannot successfully demand specific performance or, alternatively, damages. On the other hand, plaintiffs-relators contend that the written agreement dated May 17 extending the time for passing the acts of sale to May 31 not only extended the time for passage of the acts but also extended all other provisions of the original contracts including the provision that "* * * if bona fide curative work in connection with title is required, the parties herewith agreed to and do extend the time for passing of act of sale by thirty days"; that since bona fide curative work in connection with the title was necessary, the time for passing the acts of sale was extended for 30 days, to June 30, 1958.

We are therefore called upon to determine the intent of the parties to these contracts—that is, whether the instrument of May 17 extended the entire contracts including all of their provisions or whether it extended only the time for passing title.

■ It is well settled in the jurisprudence that in interpreting controversial clauses in a contract the court is guided by the interpretation the parties themselves placed upon the agreement and their understanding of it as shown by their actions. Wilcoxen v. Bowles, 1 La.Ann. 230; J. B. Levert Co. v. John T. Moore Planting Co., 135 Pa. 77, 64 So. 987; Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303; Book v. Schoonmaker, 210 La.

94, 26 So.2d 366; Pendleton v. McFarlane, 222 La. 569, 63 So.2d 1; Texas Co. v. McDonald, 228 La. 353, 82 So.2d 37; see also La.Civ.Code Art. 1956.

Let us now consider plaintiffs' allegations as to events which occurred after May 31 so that we may see what interpretation the parties themselves placed upon the extension of May 17. Did they consider that the entire contracts were extended to June 30, or did they believe that the contracts expired on May 31?

■ Obviously, under the allegations of the petition, the plaintiffs considered that the contracts did not expire until June 30. As far as the petition shows, defendants also understood that the entire contracts were extended to June 30. On June 18 defendants' attorney, as their attorney in fact, was informed that the plaintiffs were willing, able, and ready to complete the acts of sale on the next day. His only excuse for not doing so, according to the petition, was that the passing of the acts of sale on that date would not be possible. At that time other dates were suggested for passing title, but the parties could not definitely agree on a specific date. Again, on June 26 or 27, defendants' attorney was informed through his secretary that June 30 was fixed for the passing of the acts of sale, and the only reason defendants' attorney gave for not complying, according to the petition, was that he had to be in court that day and his clients would not

execute the acts of sale unless he could be present. If defendants' attorney ever took the position in these exchanges between counsel during June that the contracts had expired on May 31, the petition does not show it. According to the petition the reason given by defendants' attorney for not passing title on June 30 was not that the contracts had expired, but that his clients would not execute the contracts unless he was with them and he could not be present on that date. Under these allegations we are of the view that the parties themselves considered that the contracts had been extended in their entirety to June 30.

Defendants further contend that the time for passing the acts of sale was not extended beyond May 31 because there was no bona fide curative work in connection with title. The petition discloses that plaintiffs' attorney believed in good faith that curative work was necessary before he could approve the title for his clients. The curative work to be done is set out in detail, the attorney for the defendants was informed of this work on June 18, and the curative work was actually done before June 30. Certainly under the facts alleged in the petition we cannot say that the attorney for plaintiffs was in bad faith. Here

we do not have the question of whether there was a defect in the title; we have only the question of whether plaintiffs' attorney was in good faith and of a sincere belief that the curative work was necessary. Under these circumstances we do not find any merit in defendants' contention.

The sole question remaining for our decision is whether it was necessary for the plaintiffs to allege facts showing that they had placed the defendants in default as a prerequisite to this suit under their alternative demand for damages. Under Article 1932 of the Civil Code, when there is an active violation of a contract, the creditor is under no obligation to put the debtor in default in order to entitle him to his action.[3] Under Article 1933, when the breach has been passive, damages are due from the time the debtor has been put in default.[4] Article 1931 provides that "A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract". Mr. Leon Sarpy in an excellent article styled "The Putting in Default As a Prerequisite to Suit in Louisiana", 1

---

3. Article 1932 reads: "When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action."

4. Article 1933 reads in part: "When the breach has been passive only, damages are due from the time that the debtor has been put in default * * *."

Loyola L.Rev. 127, 134, states correctly: "* * * default means that an obligor knows that he has breached his contract and is liable for judicial redress. The status of being in default may overtake the obligor through any of four methods, namely, by (a) the act of the obligor * * *." Mr. Sarpy continues his discussion of default by the act of the obligor thus: "When the obligor has conducted himself in a manner so inconsistent with his obligation as to preclude the likelihood of his entertaining a desire to perform, the obligor is automatically placed in default by his own act. The Civil Code labels such a situation an active breach, which extends, among many other instances, to the obligor's disposition of the subject matter of the contract in a manner contrary to the obligation, and also to the obligor's deliberate refusal or acknowledged inability to perform. The reason why a putting in default is here unnecessary is that the law will not require a vain and useless thing of the obligee, such as an actual putting in default."

■ As we have previously held, June 30 was the last day for passing the acts of sale. When the defendants on this date refused to meet at the designated time and place to pass the acts of sale, they acted inconsistently with the obligation of their contract to pass title on or before this date. In our view their actions were a deliberate refusal to convey title to plaintiffs within the time fixed by the contracts. Un-der these circumstances there was an active breach of the contracts, and a putting in default was unnecessary.

For the reasons assigned the judgment of the Court of Appeal affirming the judgment of the district court which dismissed plaintiffs' suit on exception of no cause of action is annulled and set aside, and the case is remanded to the district court for further proceedings. Defendants-respondents are to pay all costs incurred in the Court of Appeal and in this court. Assessment of all other costs is to await the final disposition of the case.

## On Rehearing.

### PER CURIAM.

■ In an application for rehearing defendants aver that our decree should have affirmed the judgment of the Court of Appeal, Fourth Circuit, insofar as it held that the ten per cent deposits made by plaintiffs were earnest money and that by virtue of such deposits they were not entitled to specific performance of the contracts involved.

Having duly considered the application for rehearing filed by defendants and finding that it has merit, we do hereby amend our decree to read as follows:

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed insofar as it dismisses plaintiffs'

main demand for specific performance; said judgment is reversed, annulled, and set aside insofar as it maintains the exception of no cause of action as to the alternative demand for damages, and the case is remanded to the district court for further proceedings consistent with the views herein expressed. Defendants-respondents are to pay all costs incurred in the Court of Appeal and in this Court. Assessment of all other costs is to await the final disposition of the case.