SUMMERS, Chief Justice.*
According to the petition filed by Associated Executive Control, Inc., on January 30, 1974, Bankers Union Life Insurance Company entered into a contract with Associated to pay Associated a $50,000 finding and servicing fee in connection with the sale of the stock of Guaranty Life Insurance Company, a company owned by Bankers. A copy of the contract is attached to the petition and made a part thereof. The contract is in the form of a letter from Bankers to Associated dated January 30, 1974 and provides as follows:
*812 “This letter agreement shall memorialize a certain agreement which was made in Denver, Colorado today January 30, 1974] between you [Associated] this Company [Bankers] and Mr. F. D. V. deLa-Barre, who I understand to be Secretary-Treasurer of your company and fully authorized to act on your behalf in making this agreement.
“We agree to pay you a consulting, finding and servicing fee totaling $50,000 in the event that a sale is consummated for all of the stock of Security Guaranty Life Insurance Company which is owned by Bankers Union Life Insurance Company as of this date, in the event that you are a moving force in the consummation of a transaction which is acceptable in the full and absolute discretion and approval of Bankers Union Life Insurance Company. It is expressly understood that there are no exclusive rights granted by this letter for you to seek out and find a buyer, and Bankers Union Life Insurance Company shall be totally free to seek out a buyer independently of any efforts by you.
“In the event that such sale is consummated, which shall mean that the matter has been closed and all other aspects of the same shall be completed to the satisfaction of the company, then one month thereafter the aforementioned fee shall be due and payable to you.
“It is understood that included in the fee shall be all monies claimable by the law offices of F. D. V. deLaBarre to this Company from the date that this Company acquired the stock of Security Guaranty Life Insurance Company to the date of this agreement, including all services relating to a piece of property generally described as the Monroe Golf Course, Monroe, Louisiana, which were performed by or through the law offices of F. D. V. deLaBarre, and expenses incurred, directly or indirectly, and therefore, you will protect, indemnify and hold harmless this Company from any claims by the said F. D. V. deLaBarre, or his successors or assigns, which may concern the same property in Monroe, Louisiana, or other services done by him for the benefit of this Company.”
The petition further alleges that Associated negotiated a sale for Bankers with Ronald E. Smith and enlisted J. Darrel Jordan of Olaques, Jordan and Company to assist in consummating the transaction.
Further, it is alleged that on February 5, 1975 Bankers forwarded a copy of the proposed purchase agreement to Jordan whereby Smith would acquire the stock of Security. The agreement provided that the purchaser would pay $10,000 as partial payment of the price pending closing of the sale transaction within 45 days of the signing of the agreement to sell. Unless seller was “unable or refused” to close the transaction, the $10,000 would be forfeited to seller if the sale was not consummated within 45 days. The petition further alleges that on April 14, 1975 Jordan delivered the $10,000 to Bankers in Denver, and sought to obtain Bankers’ signature to the purchase agreement, subject to slight modifications with respect to the stock being purchased. Bankers agreed to make these revisions and to send the final purchase agreement to New Orleans for Smith’s signature.
However, on April 24, 1975, it is alleged, a Denver law firm forwarded a revised stock purchase agreement containing, among other revisions, this clause:
“Buyer further represents that he has not had any dealings with, nor has he been influenced by, the firm of Associates Executive Control, Inc., 1501 American Bank Building, New Orleans, Louisiana, or any of its agents, or F. D. V. deLa-Barre in connection with the transaction contemplated by this agreement. On the basis of such representation, seller agrees to pay any valid claim of Associates Executive Control, Inc. or F. D. V. deLa-Barre for a finder’s or brokerage fee, commission or other compensation on account of Seller’s dealings with such persons in connection with the transaction contemplated by this Agreement and to indemnify, defend and save Buyer harmless from any such claim.”
*813 The petition alleges Smith would not, and in good faith could not, make this representation. Associated explained to Bankers, but Bankers refused to delete the clause and aborted the sale.
Allegations of the petition also set forth that, by virtue of the agreement between Associated and Bankers and the complete performance by Associated, Bankers should be held to pay the $50,000 contracted for. Bankers is alleged to have arbitrarily, capriciously and unilaterally declined to consummate the sale with the willing buyer provided by Associated, although it had initially accepted the terms of the purchase agreement.
In the event the agreement between Associated and Bankers was held to be null because of a potestative condition, Associated alternatively alleges that it should recover $56,750.45 on the basis of quasi-contractual quantum meruit or under the civil law concept of culpa in contrahendo.
Bankers filed an exception of prematurity and no cause of action. The exception of prematurity is based upon the allegation that the contract between Associated and Bankers is based upon a suspensive condition, which has not been met and suit on the contract was therefore premature. For the same reasons, the exception of no cause of action alleges the petition states no cause of action and hence there can be no recovery in quasi contract or under a theory of culpa in contrahendo. The exceptions were maintained.
On appeal to the Fourth Circuit the ruling of the trial judge was affirmed. The Court of Appeal held that the terms of the agreement between Associated and Bankers left little doubt regarding the intent of the parties, providing that Associated would be entitled to the $50,000 fee if it were a moving force in the “consummation” of the stock sale, subject to acceptance in the absolute discretion of Bankers. Payment of the fee, the court decided, was subject to a suspensive condition, and the obligation could not be enforced until the condition occurred. The court relied upon Articles 2021 and 2043 of the Civil Code and the decision of this Court in Sugar Field Oil v. Carter, 207 La. 453, 21 So.2d 495 (1945) and Jordy v. Salmon Brick & Lumber Co., 121 La. 457, 46 So. 572 (1908).
Certiorari was granted on Associated’s application. 363 So.2d 72.
For the purpose of Bankers exceptions the allegations of Associated’s petition must be accepted as true. If any part of the petition states a cause of action, it must be maintained to that extent. La.Code Civ. Pro. art. 927(4); Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961). These allegations must be read in connection with the letter agreement, the initial proposed agreement to sell and the revised agreement to sell, all of which are attached to and made a part of Associated’s petition as exhibits. Jennings v. Prejean, 216 La. 645, 44 So.2d 325 (1950); Hays v. Hays, 169 La. 588, 125 So. 627 (1930).
In the letter agreement it is stated that Bankers would pay Associated a consulting, finding and servicing fee of $50,000 in the event a sale was consummated of the stock of Security Guaranty Life Insurance Company. According to the allegations of the petition, Associated did find a purchaser and Bankers did agree to sell; the only condition of the proposed sale which prevented its consummation was a provision that would compel the buyer to represent, contrary to the true facts, that he had no deals with, nor had been influenced by, Associated. This the prospective purchaser would not do, and the inference from the pleading is that the quoted requirement of Bankers was the sole reason for aborting the stock sale. Bankers’ belated requirement that the purchaser disclaim that Associated had any dealing with or that it influenced the prospective purchaser was in fact a repudiation of Bankers’ obligations under the letter agreement.
And, while Bankers did make its obligation to Associated dependent upon a sale transaction “which is acceptable in the full and absolute discretion and approval of Bankers”, there is no intimation in this letter agreement, the initial agreement to sell, or the revised agreement to sell that *814 the sale to which the prospective purchaser and Bankers agreed did not meet Bankers’ approval. But, according to the allegations of the petition and the exhibits attached, Bankers insisted that the purchaser deny Associated’s influence in bringing about the sale agreement. This would have the effect of denying Associated’s entitlement to the $50,000 fee stipulated in the letter agreement. If it had not been for this unforeseen proviso in the sale, imposed by Bankers at the last minute, the inference to be gained from the record is that the stock sale would have been “consummated”. These are the facts as they are understood.
While the letter agreement between Bankers and Associated was indeed subject to conditions, as the Court of Appeal held, none of those conditions prescribed, or implied, that Bankers could demand that the purchaser represent that Associated did not influence the stock sale, when in fact Associated did find the purchaser and did negotiate the sale. There is no doubt that allegations of the petition are emphatic that Associated “sought and negotiated a sale agreement on behalf of [Bankers].”
Nor did the condition that the sale transaction be “acceptable in the full and absolute discretion and approval of Bankers” contemplate under any interpretation that the purchaser agree that Associated had not earned its fee. It is correct to say that the letter agreement did not set forth the price of the sale or its terms and conditions. In this respect Associated’s right to recover was dependent upon the discretion of Bankers. But these unstated conditions contemplated such things as the happening of future events, the price, time, conditions of delivery, etc., agreements to be reached preliminary to the consummation of a sale.
It would be unusual to say in the letter agreement of January 30, 1974 that Bankers agree to pay Associated a fee for finding a purchaser when the sale was consummated and to later construe that agreement to mean that one of the conditions of that sale could be that the purchaser must deny, contrary to the actual facts, that Associated had any part in bringing about the sale. It is a conspicuous and intolerable abuse of the discretion contemplated in the agreement on Bankers’ part to impose such a requirement. It is saying that Bankers could agree to pay Associated a commission when certain conditions are met, but that one of the conditions would be that Bankers would not have to pay Associated the commission when those conditions are met.
Notwithstanding the provision of the letter agreement making payment of the fee dependent upon “a transaction which is acceptable in the full and absolute discretion and approval of Bankers” that discretion cannot and does not contemplate that the stock sale can be aborted by a requirement that Bankers not pay Associated’s fee when all other conditions have been fulfilled. The law does not sanction such a gross abuse of discretion. “The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.” La.Civil Code art. 1903. It is the opinion of the Court that in this respect Associated has alleged a cause of action for violation by Bankers of the letter agreement to pay $50,000. La. Civil Code art. 1931, 1957-59.
For the reasons assigned, the exception of no cause of action is denied and the case is remanded to the trial court to be proceeded with according to law, Bankers to pay all costs incurred to date.
DENNIS, J., concurs and assigns reasons.
MARCUS, J., dissents, agreeing with the Court of Appeal.

 Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.