425 So.2d 396 (1982)
Lawrence THOMAS, Plaintiff-Appellant,
v.
Harold KENTON, Jr., et al., Defendants-Appellees.
No. 82-342.
Court of Appeal of Louisiana, Third Circuit.
December 28, 1982.
Pucheu, Pucheu & Pucheu, John H. Pucheu, Eunice, for plaintiff-appellant.
*397 Jones, Patin, Tete, Nolen & Hanchey, William R. Tete and Gregory P. Massey, Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and LABORDE, JJ.
FORET, Judge.
Plaintiff filed this tort action or, alternatively, workmen's compensation action, seeking either damages or compensation benefits. Made defendants herein were Hercules, Inc., plaintiff's employer, Harold Kenton, Jr., C. Doyle Miller, and John R. Bohannon, officers of Hercules, Inc., and Dr. Boyd M. Woodard, the plant physician for defendant, Hercules.
Petitioner alleges that he suffers from a condition or disease known as Boeck's Sarcoid, and that during his employ at Hercules, this condition became progressively worse, resulting in a steady decrease in his lung capacity, which eventually necessitated him to discontinue his employment. Plaintiff alleges that the cause of his permanent disability was the nature of his duties at Hercules, or the conditions under which he worked, or both.
Claiming tortious conduct on the part of the defendants under LSA-C.C. Articles 2315 and 2316, petitioner alleges that defendants were negligent in the following particular manner:
"That the negligence, imprudence and want of skill of the defendants include, but is not limited to, the following:
A. In failing to inform petitioner of information they possessed indicating the progressive deterioration of his condition and the steady decrease in his lung capacity.
B. In failing to warn petitioner of the danger of a person with his condition continuing to perform the job he was performing, particularly since defendants had information indicating the progressive deterioration of petitioner's lung capacity and knew or should have known of the danger to his health.
C. In failing to take any action to avoid, prevent, reduce or mitigate the progressive deterioration of petitioner's condition and the steady decrease of his lung capacity even though they knew or should have known of the progressive decrease of his lung capacity and of the danger of his health.
D. In failing to provide petitioner with a safe place to work even though they had information indicating the steady decrease of his lung capacity and knew or should have known this was caused by or related to the conditions under which he was working."
Defendants herein filed exceptions of no cause of action to plaintiff's tort claim, which exceptions were sustained. Plaintiff's tort suit against all defendants was dismissed, and plaintiff was permitted to prosecute his alternative workmen's compensation claim.
From this adverse judgment, plaintiff has appealed.

ISSUES
The issues herein presented are the following:
(1) Is plaintiff's remedy one in workmen's compensation or tort?
(2) Has plaintiff stated a cause of action against defendant, Dr. Boyd M. Woodard?

EXCEPTION OF NO CAUSE OF ACTION FILED BY HERCULES, KENTON, MILLER, AND BOHANNON
Plaintiff alleges that the negligent acts above quoted from his petition caused his condition or disease to worsen, resulting in his alleged disability.
Ordinarily, workmen's compensation is the sole remedy of an employee who, through injury or occupational disease arising out of his employment, becomes disabled. This exclusivity is established by LSA-R.S. 23:1032 which provides in part:

*398 "R.S. 23 § 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease." (Emphasis ours.)
It is clear that the only statutory exception to the exclusivity of workmen's compensation is for intentional torts. Courtney v. BASF Wyandotte Corporation, 385 So.2d 391 (La.App. 1 Cir.1980), writ denied, 386 So.2d 359 (La.1980).
Plaintiff alleges in his petition that at all material times herein he was employed by Hercules, Inc. He alleges that the negligent conduct on the part of Hercules and/or its executive officers caused a deterioration in his condition. Nowhere in his petition does he allege an intentional tort which would remove him from the exclusivity provision of LSA-R.S. 23:1032. Without allegations of an intentional tort, plaintiff's exclusive remedy is in workmen's compensation. Courtney v. BASF Wyandotte Corporation, supra; Bazley v. Tortorich, 397 So.2d 475 (La.1981).
In considering an exception of no cause of action, all well-pleaded facts in the petition must be taken as true and, if the allegations set forth a cause of action in any respect, the exception must be overruled. Pence v. Ketchum, 326 So.2d 831 (La.1976); Eschete v. City of New Orleans, 258 La. 133, 134, 245 So.2d 383 (La.1971); Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961).
Taking the facts alleged by plaintiff in his petition and considering the applicable law, we find that the trial court properly sustained the exception of no cause of action filed by Hercules, Kenton, Miller and Bohannon, dismissing plaintiff's suit in part against them. Furthermore, the trial court properly allowed plaintiff to proceed on his alternative demand for workmen's compensation.
To create a cause of action in tort, plaintiff attempts to rely on the case of Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981), wherein defendant employer conducted a pre-employment examination of a prospective employee and detected a tubercular condition during the said examination, but failed to disclose the condition to the prospective employee. The prospective employee was subsequently hired and, "During her employment, she experienced a persistent cough, nasal drip and hoarseness in her voice which progressively worsened...". She later, through her own physician, was advised of her condition.
Holding that there are certain instances wherein a duty to disclose is imposed upon an employer, the Louisiana Supreme Court therein stated:
"We recognize at the outset that an employer generally owes no duty to a prospective employee to ascertain whether he or she is physically fit for the job sought.

We conclude in the instant case that under the general principles of tort liability enunciated in La.Civ.Code arts. 2315 and 2316, defendants owed a duty to plaintiff to disclose the tubercular condition discovered during her pre-employment physical examination. The check [sic] x-ray revealing plaintiff's condition was under the care and custody of the hospital and its assistant administrator (Grun). To notify plaintiff of the findings would have been a simple matter not requiring the professional skill of a physician and not imposing an undue burden upon an administrative or personnel official of the hospital. While we do not consider that the hospital had any obligation to give plaintiff a pre-employment physical examination, once it undertook to do so and subsequently employed her, she was entitled to and did rely upon the *399 expectation that she would be told of any dangerous condition actually disclosed by that examination, especially considering the fact that she was employed by the hospital to perform duties placing her in contact with co-employees and hospital patients." (Emphasis ours.)
While we agree with the above quoted language, given the particular facts and circumstances of Dornak, we find that it is inapplicable to this case. The Supreme Court, by its own terms, limited its holding in Dornak to pre-employment physical examinations. Here, plaintiff does not allege a breach of duty to disclose a condition discovered at a pre-employment examination. Plaintiff, having failed to make these allegations, has not pleaded himself into the narrowly defined rule enunciated in Dornak.

CAUSE OF ACTION AS TO DR. WOODARD
Plaintiff also seeks recovery in tort against Dr. Woodard, the plant physician. Dr. Woodard excepts to plaintiff's petition on the ground that plaintiff has failed to allege any duty owed by the doctor to the plaintiff. The crux of his argument is that if no doctor-patient relationship existed between plaintiff and the doctor, then there was no duty of disclosure to be breached.[1]
The same discussion which we have heretofore made concerning the requisites for making a determination as to whether an exception of no cause of action should be sustained are applicable here and our only inquiry is whether, considering all the wellpleaded facts in plaintiff's petition as true, he has stated a cause of action against Dr. Woodard. Pence v. Ketchum, supra; Eschete v. City of New Orleans, supra; Elliott v. Dupuy, supra.
Plaintiff herein saw Dr. Woodard as part of a program wherein employees of Hercules underwent physical examinations on a yearly basis or at least every two years. This particular examination was not initiated by complaints of the plaintiff, but merely as part of the regular check-up procedures of Hercules. Therefore, Dr. Woodard was not seeking to examine the plaintiff for any particular ailment, but merely to ascertain his overall health. Plaintiff was not a private patient of the doctor.
Dr. Woodard was retained by Hercules, and he spent three half-days per week at Hercules' plant for the purpose of conducting these physical examinations. In his deposition, John R. Bohannon, the employee relations manager in charge of overseeing the medical department, testified that the physical was "not an extremely thorough physical examination" and likened it to "the sort of physical a person would take for the purposes of determining whether or not they would be eligible for life insurance".
The case of Hoover v. Williamson, 236 Md. 250, 203 A.2d 861 (1964), presented a strikingly similar situation. There, each year x-ray examinations of the chests of certain employees of General Electric Company were required by the company under the direction and supervision of a plant physician who was paid for his services by the company. One of their employees was examined and alleged that the x-ray examination revealed that he was suffering from silicosis, but that the plant doctor affirmatively misrepresented to him the nature of his condition and concealed from him the recommendations of other consultants, thereby causing his lung condition to become more serious and to eventually turn into a permanent disease. Citing cases from Missouri, Mississippi, Ohio, Minnesota, *400 New York, and Texas, the court therein stated:
"The appellee is right in his contention that ordinarily recovery for malpractice or negligence against a doctor is allowed only where there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and the patient will pay for such treatment, and there has been a breach of professional duty to the patient. Thus, it has been held that there is not a doctorpatient relationship between: (a) a prospective or actual insured and the physician who examines him for the insurance company; or (b) a prospective or actual employee and the doctor who examines him for the employer." (Emphasis ours.)
Exceptions to this rule would encompass situations where the doctor would assume, though gratuitously, to undertake to render services which he should recognize as necessary to another's bodily safety, and leads the other in reasonable reliance on the services to refrain from taking other protective steps, or to enter on a dangerous course of conduct (Restatements 2nd, Torts, § 323), or, where the doctor himself, even without the requisite doctor-patient relationship, actually causes the condition complained of.
If, therefore, plaintiff is to hold defendant liable for the worsening of his condition, he must either allege a breach of duty arising out of a doctor-patient relationship, or that he was misinformed or not informed of a condition that the doctor had a duty to disclose to him or that the doctor's action or failure to take action actually was the cause-in-fact of his alleged injury.
Plaintiff, in his petition, does not allege a doctor-patient relationship. In fact, he alleges that Dr. Woodard is the "plant physician". Having failed to allege a doctor-patient relationship, there could be no breach of duty arising therefrom since none is asserted, and plaintiff, in this respect, has failed to state a cause of action.
In Bohannon's deposition, above referred to, Bohannon testified that, "Dr. Woodard is retained by the company as our company physician. We consider him an employee in that respect, that is he is paid a monthly retainer". The doctor was hired by the company for their benefit and any benefit that their employees receive from having a doctor there to conduct these examinations was only secondary in nature. In another strikingly similar case wherein a company physician who gave pre-employment physical examinations to potential employees was sued by a company employee for failing to inform her that x-rays disclosed a tubercular condition, a Texas court held that the physician was not under a duty to the "patient" to discover the condition, his employment in this regard being solely for the benefit of the employer and no duty of discovery towards the employee was imposed upon him. Lotspeich v. Chance Vought Aircraft, 369 S.W.2d 705 (Tex.Civ. App. 1963).
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] Dr. Woodard, in his brief filed in this Court, raises only the defense of no doctor-patient relationship. He does not raise the issue of whether or not he is a co-employee of the plaintiff so as to be absolved from tort liability under LSA-R.S. 23:1032. Inasmuch as the latter issue was not raised by Dr. Woodard, either in the lower court or in this Court, we will not decide whether or not Dr. Woodard's relationship with Hercules was that of an employeremployee. Be that as it may, assuming arguendo that Dr. Woodard could be classified as a co-employee, we would still conclude, as we did in the case of the other defendants herein, that the allegations of plaintiff's petition do not support a cause of action for an intentional tort against Dr. Woodard.