580 So.2d 525 (1991)
C.T. TRAINA PLUMBING AND HEATING CONTRACTORS, INC.
v.
James E. PALMER.
No. 90-CA-0919.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
*526 Charles W. Nelson, Jr., New Orleans, for James E. Palmer, III.
Ernest A. Burguieres, III, New Orleans, for C.T. Traina Plumbing and Heating Contractors, Inc.
Before SCHOTT, C.J., and LOBRANO and WARD, JJ.
WARD, Judge.
This is a suit in contract between C.T. Traina Plumbing and Heating Contractors, Inc. and James E. Palmer, known as "Jed Palmer". The issue is whether C.T. Traina Plumbing and Heating entered into a contract with Palmer, individually, or with Muddy Waters, Inc., the corporate lessee of Palmer. The trial court found that the contract was between C.T. Traina Plumbing and Heating, Inc. and Palmer. From a judgment in favor of plaintiff, Palmer appeals.[1] We affirm.
Petitioner, James E. Palmer, bought the property located at 8301 Oak Street in 1972. At that time, Palmer formed a corporation named Muddy Waters, Inc. of which he was sole shareholder. From 1972 until 1980, Palmer operated a live music club known as "JED'S" at that location. From 1980 until 1986, Palmer leased this building to others who operated a live music club, a disco, and again a live music club. In July, 1986, a fire rendered the building unusuable, and the building remained vacant until March, 1987, when Palmer, Larry Berestitsky, and Ned Hobgood, decided to open a club at that location.
On March 15, 1987, Palmer sold 100 shares of stock of Muddy Waters, Inc., Inc. each to Berestitsky and Hobgood at one dollar ($1.00) per share. Additionally, Palmer, Berestitsky, and Hobgood each promised to loan the corporation $5,000.00.
Two weeks later, after repairs and renovations had begun, on April 1, 1987, Palmer allegedly leased the building at 8301 Oak Street to Muddy Waters, Inc. for $3,500.00 per month. However, Muddy Waters, Inc. never made any lease payments to Palmer, and after all improvements were completed, Muddy Waters, Inc. dationed the property to Palmer for non-payment of rent, relinquishing all claims for improvements made to the property or movables contained in the premises.
On or about March 15, 1987, Joey Unack contacted Gary Traina of C.T. Traina Plumbing and Heating Contractors, Inc., informing him that Palmer was renovating 8301 Oak Street and asking Traina whether he would be interested in doing some work for "JED'S" on Oak Street.
Traina subsequently entered into an oral agreement with Palmer whereby Traina would make repairs and renovations including, but not limited to, the installation of a new kitchen, four new bathrooms, two complete bars, a new water system for the entire building, and a drain room for cooking seafood. The work was to be performed on a cost-plus basis because no blueprints existed. Improvements were made to the property step by step; Palmer would tell Traina what he wanted, Traina would draw it on a slab of concrete at the job site, Palmer would approve the work, and as Traina performed the work, Palmer would determine the next step.
Subsequent to the commencement of work, Palmer told Traina to direct all bills to Muddy Waters, Inc., but to send the bills to Palmer's private residence. The total cost for all of the repairs and renovations performed by Traina was $26,001.23. Traina completed the work by February, 1988. However, as of May 5, 1987, only $8,481.00 had been paid, leaving an unpaid balance of $17,520.23.
On May 19, 1987, Muddy Waters, Inc.'s attorney informed Traina by letter that Palmer would pay Traina in full, pending final inspection. In February, 1988, the New Orleans Sewerage and Water board *527 issued a final inspection certificate, but Traina was not paid for his work.
The Civil District Court for the Parish of Orleans rendered judgment in favor of C.T. Traina Plumbing and Heating Contractors, Inc. and against Muddy Waters, Inc. and James E. Palmer in the amount of $17,520.23, plus attorney's fees in the amount of $3,500.00. From this judgment, James E. Palmer appeals, and contends:
The trial court erred in finding that Traina proved by a preponderance of the evidence that he contracted with Palmer individually.
The trial court erred in finding that Traina's testimony alone, without corroborating evidence, satisfied the standard of proof required by La.C.C. art. 1846 of the Louisiana Civil Code.
The trial court erred in finding that Traina's performance indicated that he intended to form a contract with Palmer.
A party alleging that he contracted with another has the burden of proving the existence and terms of the contract by a preponderance of the evidence.
The trial court decided this case based upon the credibility of the witnesses, believing Traina's testimony and not Palmer's. Traina testified that he believed he was working for Palmer whom he knew as "Jed" because he was asked whether he would like to renovate "Jed's" on Oak Street; he knew the building as "Jed's"; "Jed" approved Traina's work step by step on a daily basis; "Jed" asked Traina to send all bills to his private residence, and "Jed" personally vouched for the money owed Traina.
The standard of appellate review is stated in Canter v. Koehring, 283 So.2d 716 (La.1973):
The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Id. at 724.
Accordingly, this Court should defer to the trial court's decision that Traina's testimony was indeed credible.
Palmer contends that even if this Court were to defer to the trial court's determination of Traina's credibility, Traina's testimony, in the absence of corroborating evidence, fails to support the standard of proof required by Article 1846 of the Louisiana Civil Code.
Article 1846 provides that a contract in excess of $500.00 must be proved by the testimony of one credible witness and other corroborating circumstances. Palmer maintains that even if Traina's testimony was credible, it was contradicted by other testimony, and in the absence of corroborating circumstances, Traina's testimony alone does not satisfy the standard of proof required by Article 1846. See e.g., Bordlee v. Pat's Construction Co., Inc., 316 So.2d 16 (La.App. 4th Cir.1975).
Palmer argues that Traina's testimony was not supported by corroborating circumstances because all the bills were made out to Muddy Waters, Inc., all payments made to Traina were drawn on an account in the name of Muddy Waters, Inc. with checks imprinted "Muddy Waters, Inc.," and Traina also sent bills to Hobgood and Berestitsky after suit was filed.
In finding for Traina, the lower court referred to the various documents that corroborated Traina's testimony. At trial, Traina produced several daily worksheets citing "Jed's" as the job site, demolition and building permits naming Jed as property owner and contractor, copies of all of the bills Traina sent to Palmer's private residence, and the letter Traina received from Muddy Waters, Inc.'s attorney, informing Traina that Palmer would pay the unpaid balance pending final inspection.
The trial court also observed that the alleged lease between Palmer and Muddy Waters, Inc. was not recorded and contractors and subcontractors were not put on notice that the premises were leased by a corporation.
*528 Thus, the lower court found that Traina's testimony was corroborated by documentation and by other testimony. We agree.
Finally, Palmer contends that the most favorable interpretation of Traina's testimony is that the terms of the contract were doubtful or ambiguous and that the best indication of whether Traina intended to contract with Palmer is Traina's performance. See e.g., Plaquemines Oil and Development Co. v. State, 208 La. 425, 23 So.2d 171 (1945); Book v. Schoonmaker, 210 La. 94, 26 So.2d 366 (1946); Jacka v. Ouachita Parish School Board, 249 La. 223, 186 So.2d 571 (1966). Palmer emphasizes that Traina accepted instructions from Hobgood as well as Jed, Traina made the bills out to Muddy Waters, Inc., and Traina accepted payment from Muddy Waters, Inc.
Traina testified that he accepted instructions from Hobgood on one occasion because Palmer was not available. Additionally, Traina directed the bills to Muddy Waters, Inc., at Palmer's request, because he thought that the payments were being run through a business for tax purposes. Traina also testified that, although the bills were directed to Muddy Waters, Inc., it was Palmer who asked Traina to send the bills to his residence. Traina accepted payments from Muddy Waters, Inc. because Palmer requested that the bills be directed to Muddy Waters, Inc. instead of himself. Finally, Traina's daily worksheets cited "Jed's" as the job site.
It is the duty of an agent to disclose to those with whom he contracts that he is acting as an agent for a corporation in order to escape personal liability for the cost of the work performed. The burden of proving disclosure of corporate existence and corporate capacity is placed on him who asserts the agent relationship. Chartres Corporation v. Clarence Twilbeck, 305 So.2d 730 (La.App. 4 Cir.1974).
We agree with the lower court's determination that Traina's performance demonstrates that he believed he contracted with Palmer and not with Muddy Waters, Inc., exclusively.
This Court may not properly disturb the lower court's finding "unless it is clearly wrong." Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) (emphasis in original). We do not believe that the lower court has committed manifest error. Thus, for the aforementioned reasons, we affirm the lower court's judgment in favor of C.T. Traina Plumbing and Heating Contractors, Inc. and against James E. Palmer in the amount of $17,520.23, plus attorney's fees in the amount of $3,500.00, plus costs. The costs of the appeal are assessed to James E. Palmer.
AFFIRMED.
NOTES
[1] Palmer is deceased. The Administrator of his Succession has been substituted as appellant.